**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

LUMINANT GENERATION COMPANY
LLC and ENERGY FUTURE HOLDINGS
CORP.,

        Petitioners,

                              No. 12-60694

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY and LISA P. JACKSON,
ADMINISTRATOR, UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY,

        Respondents.
_____/

## EPA'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Pursuant to Section 307(b)(1) of the Clean Air Act ("CAA"), 42 U.S.C. § 7607(b)(1), Respondents United States Environmental Protection Agency and Lisa P. Jackson, in her official capacity as the Administrator of the United States Environmental Protection Agency (collectively "EPA" or "Agency"), move this Honorable Court to dismiss the Petition for Review filed by Luminant Generation Company LLC and Energy Future Holdings Corporation (collectively "Luminant") for lack of subject matter jurisdiction.[1]

---

[1] Pursuant to Fifth Circuit Rule 27.4, EPA has conferred with Luminant's counsel, who has indicated that Luminant opposes this motion and will file an opposition.

- 1 -

Luminant seeks review of a document issued by EPA on July 13, 2012, entitled "Notice and Finding of Violation," or "NOV."[2] The NOV does not direct Luminant to do anything or refrain from doing anything. It does not sanction or impose any penalty on Luminant. The NOV instead simply informs Luminant about EPA's findings concerning noncompliance at two of Luminant's power plants. Steps that may follow issuance of the NOV are within EPA's discretion. In accordance with the CAA, the Agency may, for example, request more investigatory information; issue an administrative compliance order; assess an administrative penalty; or institute a civil enforcement action in district court. See 42 U.S.C. §§ 7413(a)(1), 7414. The NOV itself, however, does not alter the status quo or carry any legal consequence for Luminant.

Bottom line: judicial review under the CAA is confined to "final" agency action, 42 U.S.C. § 7607(b)(1), and "[a]n EPA notice of violation is not reviewable because it is not a final agency action." Pacificorp v. Thomas, 883 F.2d 661 (9th Cir. 1988). The petition should therefore be dismissed.

### STATUTORY AND REGULATORY BACKGROUND

Under the CAA, "the States and the Federal Government [are] partners in the struggle against air pollution." General Motors Corp. v. United States, 496

---

[2] Luminant has attached a copy of the NOV to its Petition for Review.

U.S. 530, 532 (1990). EPA establishes national ambient air quality standards ("NAAQS") for air pollutants, and States play a "statutory role as primary implementers of the NAAQS." Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 470 (2001) (emphasis in original). Each State must draft and submit to EPA for approval a State Implementation Plan ("SIP") that provides for the attainment and maintenance of the NAAQS. See 42 U.S.C. §§ 7407(a), 7410; Train v. Natural Res. Def. Council, Inc., 421 U.S. 60, 66-67 (1975). An EPA-approved SIP is federally enforceable. 42 U.S.C. §§ 7413, 7477, 7604(a); General Motors, 496 U.S. at 533-34.

In places designated "attainment" or "unclassifiable," i.e., areas within a State where the NAAQS are satisfied or for which insufficient data exists to know whether they have been satisfied, a SIP must "prevent significant deterioration of air quality." 42 U.S.C. §§ 7471, 7410(a)(2)(D)(i)(II); Alaska Dep't of Envtl. Conservation v. EPA, 540 U.S. 461, 471 (2004) ("ADEC"). Under the Prevention of Significant Deterioration ("PSD") program, no source that would emit substantial quantities of pollutants regulated under the CAA "may be constructed or modified unless a permit prescribing emission limitations has been issued for the facility." ADEC, 540 U.S. at 472; see 42 U.S.C. §§ 7475(a)(1), 7479(1), (2)(C). The preconstruction permit must require, inter alia, use of "best available control technology" ("BACT"), defined as an "emission limitation" "based on the

maximum degree of reduction . . . achievable" for the facility, taking into account specified factors. 42 U.S.C. § 7479(3); ADEC, 540 U.S. at 485-86.

Under Title V of the CAA, 42 U.S.C. §§ 7661-7661f, major stationary sources of air pollution are also required to obtain an operating permit. "The intent of Title V is to consolidate into a single document (the operating permit) all of the clean air requirements applicable to a particular source of air pollution." Sierra Club v. Ga. Power Co., 443 F.3d 1346, 1348 (11th Cir. 2006). These include, for example, the requirements of the PSD program to the extent they apply to the source.

The State of Texas has an EPA-approved SIP, which in accordance with the CAA contains requirements for new or modified sources to obtain PSD preconstruction permits. See 40 C.F.R. § 52.2270(c), incorporating portions of 30 Tex. Admin. Code Ch.116 (2012); CleanCOALition v. TXU Power, 536 F.3d 469, 473 (5th Cir. 2008). Texas also has an EPA-approved Title V operating permits program. See 30 Tex. Admin. Code Ch. 122 (2012); 63 Fed. Reg. 66,318 (Dec. 6, 2001); Public Citizen, Inc. v. EPA, 343 F.3d 449 (5th Cir. 2003).

The CAA provides EPA with extensive and varied enforcement options. See, e.g., Sections 113(a)(1), (3), 114(a)(1), 42 U.S.C. §§ 7413(a)(1), (3), 7414(a)(1). Under the express terms of the statute, however, EPA may not avail

itself of <u>some</u> of these options unless and until EPA has <u>first</u> issued an NOV to the allegedly offending party. Specifically, Section 113(a)(1) of the CAA provides:

> Whenever, on the basis of any information available to the Administrator, the Administrator finds that any person has violated or is in violation of any requirement or prohibition of an applicable implementation plan or permit, the <u>Administrator shall notify</u> the person and the State in which the plan applies of such finding.

42 U.S.C. § 7413(a)(1) (emphasis added). It then further states:

> At any time <u>after the expiration of 30 days following the date on which such notice of a violation is issued</u>, the Administrator may . . . (A) issue an order requiring such person to comply with the requirements or prohibitions of such plan or permit, (B) issue an administrative penalty order in accordance with [42 U.S.C. § 7413(d)], or (C) bring a civil action in accordance with [42 U.S.C. § 7413(b)].

42 U.S.C. § 7413(a)(1) (emphasis added). <u>See</u> <u>also</u>, <u>e.g.</u>, Section 113(a)(3) of the CAA, 42 U.S.C. § 7413(a)(3) (broad authority for EPA to enforce, for example, any "rule, plan, order, waiver or permit promulgated, issued or approved" under the PSD or Title V provisions of the CAA); Section 114(a)(1) of the CAA, 42 U.S.C. § 7414(a)(1) (broad authority for EPA to "require any person who owns or operates any emission source . . . on a one-time, periodic or continuous basis to . . . provide such other information as the Administrator may reasonably require").

## FACTUAL AND PROCEDURAL BACKGROUND

Luminant, according to the NOV, owns and operates the Big Brown and Martin Lake Power Plants in Texas. NOV ¶¶ 30, 33-34. These two power plants emit, among other constituents, nitrogen dioxide and sulfur dioxide, which are regulated air pollutants. NOV ¶¶ 3, 33-35. On approximately seven occasions, Luminant modified these plants in a significant way, which required a PSD preconstruction permit. NOV ¶¶ 36-40. Luminant, however, never sought a PSD preconstruction permit. NOV ¶ 41. Luminant also continued to operate its plants without seeking an amendment to its Title V operating permit to include BACT and other requirements of the PSD program and the Texas SIP. NOV ¶ 46. EPA believes that these actions constitute violations of the CAA and the Texas SIP. NOV ¶¶ 41, 45, 46.

When it issued the NOV on July 13, 2012, EPA shared the foregoing findings with Luminant, a precondition for taking any of the enforcement actions enumerated in Section 113(a)(1). Although the NOV did reference some of EPA's enforcement authorities and options, including those enumerated in Section 113(a)(1), the NOV itself did not order Luminant to do anything or refrain from doing anything. Nor did it specify any sanction or penalty.

Luminant's Petition for Review followed.

ARGUMENT

I. THE COURT LACKS JURISDICTION BECAUSE THE NOTICE AND FINDING OF VIOLATION IS NOT FINAL AGENCY ACTION

Under Section 307(b)(1) of the CAA, the Court may review only "final action of the Administrator." 42 U.S.C. § 7607(b)(1); ADEC, 540 U.S. at 482 ("42 U.S.C. § 7607(b)(1) . . . renders reviewable in the appropriate federal court of appeals any EPA 'final action.'"). Finality is jurisdictional; "[i]f there is no 'final agency action,' a federal court lacks subject matter jurisdiction." Peoples Nat'l Bank v. Office of the Comptroller of the Currency of the United States, 362 F.3d 333, 336 (5th Cir. 2004) (citation omitted).

As a matter of law, the subject of Luminant's Petition for Review -- EPA's NOV -- is not final. Although the question of whether an NOV is final may be one of first impression in this Circuit, "all of the circuits that have addressed the issue have concluded that it is not." Royster-Clark Agribusiness, Inc. v. Johnson, 391 F. Supp. 2d 21, 28 (D.D.C. 2005) (citing, inter alia, Pacificorp v. Thomas, 883 F.2d 661 (9th Cir. 1988); Union Elec. Co. v. EPA, 593 F.2d 299, 304-06 (8th Cir. 1979); and West Penn Power Co. v. Train, 522 F.2d 302, 310-11 (3d Cir. 1975)).[3]

---

[3] See also Ameren Missouri v. EPA, No. 4:11CV02051AGF, 2012 WL 4372518, at *2 n.3 (E.D. Mo. Sept. 25, 2012) ("NOVs are not final agency actions.") (citations omitted).

The Ninth Circuit could not have been more clear and concise: "An EPA notice of violation is not reviewable because it is not a final agency action." Pacificorp, 883 F.2d at 661. EPA urges this Court to reach the same conclusion.

The same conclusion follows from Bennett v. Spear, 520 U.S. 154 (1997), where the Supreme Court articulated a two-part test for finality. "As a general matter," a final action (1) must be one that "mark[s] the 'consummation' of the agency's decisionmaking process," rather than one that is "merely tentative or interlocutory [in] nature," and (2) it "must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" Id. at 177-78 (citations omitted). This Court has since applied the Bennett v. Spear test in dismissing a petition for review of non-final EPA action. See National Pork Producers Council v. EPA, 635 F.3d 738, 755 (5th Cir. 2011).

Like the petitioner in National Pork Producers, Luminant cannot establish finality under either part, let alone both parts, of the Bennett v. Spear test. We address each part of the test below, beginning with the second part.

### A. THE NOV DID NOT DETERMINE LEGAL RIGHTS OR OBLIGATIONS OR TRIGGER LEGAL CONSEQUENCES

Luminant cannot establish the second part of the Bennett v. Spear test. Through the NOV, EPA did not determine any of Luminant's legal rights or obligations. Luminant did not become any more or less compliant with the CAA

or the Texas SIP simply because EPA shared its views on the matter in advance of any enforcement action. See Sierra Club v. Johnson, 541 F.3d 1257, 1267 (11th Cir. 2008) (NOVs simply "help[] guarantee that a party receives notice of the accusations leveled against them prior to the EPA taking further enforcement action"). Both before and after the NOV, Luminant's rights and obligations remain the same. See National Pork Producers, 635 F.3d at 754-56 (second part of Bennett v. Spear test not met where agency merely advised parties in guidance letters of their statutory obligations and such guidance in and of itself had "no effect on a party's rights or obligations").

In addition, Luminant is not required to do anything or refrain from doing anything by reason of the NOV. See Sackett v. EPA, 132 S. Ct. 1367, 1371 (2012) (second part of Bennett v. Spear test met, in part because "[b]y reason of the [EPA compliance] order, the [plaintiffs] have the legal obligation to 'restore' their property according to an agency-approved Restoration Work Plan, and must give the EPA access to their property and to 'records and documentation related to the conditions at the Site.'") (quoting EPA's compliance order). Any directive from EPA to Luminant could occur, if at all, in conjunction with a future enforcement action. See Peoples Nat'l Bank, 362 F.3d at 337 (agency action is "non-final" where it "'does not of itself adversely affect complainant but only affects his rights

adversely on the contingency of future administrative action'") (quoting Rochester Tel. Corp. V. United States, 307 U.S. 125, 130 (1939)).

Moreover, no legal consequences flow from issuance of the NOV. Although EPA might take an enforcement action against Luminant in the future – indeed, Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1), requires EPA to issue an NOV to preserve some of its enforcement options -- the NOV alone does not trigger any legal consequences. See Royster-Clark, 391 F. Supp. 2d at 28 ("[N]o legal consequences flow from the issuance of the NOV because it merely notifies plaintiffs of their existing obligations under the CAA. It does not impose any new obligations or penalties on plaintiffs, and it does not even direct or request that plaintiffs correct the alleged violations.").

The NOV does not, for example, "expose[] [Luminant] to double penalties in a future enforcement proceeding." Sackett, 132 S. Ct. at 1372. Compare id. at 1370 ("[W]hen the EPA prevails against any person who has been issued a compliance order but has failed to comply, that amount is increased to $75,000 – up to $37,500 for the statutory violation and up to an additional $37,500 for violating the compliance order."). No statutory or regulatory provision authorizes separate and additional penalties for "violating" an NOV. Furthermore, because the NOV did not direct Luminant to do anything or refrain from doing anything, there is no term in the NOV that Luminant must choose to obey or ignore at peril.

Nor, unlike in Sackett, can Luminant point to any statutory or regulatory provision that would preclude the processing of any PSD preconstruction permit or amended or renewed Title V operating permit that Luminant may choose to pursue merely because EPA issued the NOV. See Sackett, 132 S. Ct. at 1372 (second part of Bennett v. Spear test met, in part because "the order . . . . severely limits the Sacketts' ability to obtain a permit for their fill from the Army Corps of Engineers, see 33 U.S.C. § 1344. The Corps' regulations provide that, once the EPA has issued a compliance order with respect to certain property, the Corps will not process a permit application for that property unless doing so 'is clearly appropriate.'") (quoting 33 C.F.R. § 326.3(e)(1)(iv)). To the contrary, EPA has a practice of denying administrative petitions to object to Title V permits where petitioners seek to demonstrate permit deficiencies simply by pointing to NOVs issued by EPA to the permittees. See Sierra Club v. Johnson, 541 F.3d at 1268 (EPA reasonably denied petition to object to Title V permit based merely on "EPA's issuance of a violation notice or the initiation of a civil enforcement action"); Sierra Club v. EPA, 557 F.3d 401, 411-412 (6th Cir. 2009) (EPA reasonably construed the CAA to mean that "a prior notice of violation and

enforcement action did not by themselves require [EPA] to object to a permit request").[4]

Thus, the NOV is not final under the second part of the Bennett v. Spear test, because it does not determine legal rights or obligations or trigger legal consequences.

### B. THE NOV DOES NOT MARK THE CONSUMMATION OF THE AGENCY'S DECISIONMAKING PROCESS

Luminant also cannot establish the first part of the Bennett v. Spear test. The NOV has none of the hallmarks of finality. It is, quite to the contrary, a step that may mark the commencement of some future process. As the Eleventh Circuit has explained, "[a] violation notice is simply one early step in the EPA's process of determining whether a violation has, in fact, occurred." Sierra Club v. Johnson, 541 F.3d at 1267 (internal quotation marks and citation omitted).

Following the issuance of an NOV, EPA "may," for example, "issue an order," "issue an administrative penalty," or "bring a civil action." 42 U.S.C.

---

[4] While Texas generally "consider[s] compliance history when preparing draft permits and when deciding whether to issue, renew, amend, modify, deny, suspend, or revoke a permit," 30 Tex. Admin. Code § 60.3(a)(1) (2012), nothing in its permitting program precludes the processing of an application based merely on an NOV. Moreover, before a permitting decision is made, a source has ample opportunity to correct notations of compliance history with which it disagrees. See id. § 60.3(e)-(g).

§ 7413(a)(1). Although NOVs consist of "find[ings]," id., "'finds' in this setting refers to an initial determination – sometimes tentative, sometimes certain, but always subject to revision based on new information." Sierra Club v. EPA, 557 F.3d at 407 (emphasis added). Indeed, because of their interlocutory nature, NOVs are no more final than administrative complaints, which the Supreme Court has long regarded as non-final. See FTC v. Standard Oil Co. of Cal., 449 U.S. 232, 241 (1980) (where an administrative complaint initiated adjudicative proceedings, the complaint represented only a "threshold determination that further inquiry is warranted," whose allegations were not "definitive" because they could be challenged in the proceeding); Energy Transfer Partners, L.P. v. FERC, 567 F.3d 134, 140-42 (5th Cir. 2009) (explaining Standard Oil).

In short, NOVs mark only the beginning rather than the consummation of EPA's decisionmaking process. See Sierra Club v. EPA, 557 F.3d at 408 ("Whichever path the agency chooses, its initial 'finding' marks only the beginning of a process designed to test the accuracy of the agency's initial conclusions."). As such, the NOV is not final under the first part of the Bennett v. Spear test. Cf. Exxon Chems. Am. v. Chao, 298 F.3d 464, 467 (5th Cir. 2002) (first part of Bennett v. Spear test not met where agency had "not issued a decision definitively resolving the merits").

## CONCLUSION

Luminant cannot establish that EPA's Notice and Finding of Violation constitutes "final action of the Administrator" within the meaning of the judicial review provision of the Clean Air Act, 42 U.S.C. § 7607(b)(1). Accordingly, the Court should dismiss the Petition for Review for lack of subject matter jurisdiction.

                    Respectfully submitted,

Date: October 12, 2012          IGNACIA S. MORENO
                                          Assistant Attorney General

                                        ___/s/ Andrew J. Doyle_____
                                        Andrew J. Doyle, Attorney
                                        United States Department of Justice
                                        Environment & Natural Resources Division
                                        P.O. Box 7611
                                        Washington, DC 20044
                                        (202) 514-4427 (p)
                                        (202) 514-8865 (f)
                                        andrew.doyle@usdoj.gov

OF COUNSEL:

Susan Stahle
Office of General Counsel
United States Environmental Protection Agency
1200 Pennsylvania Ave., NW
Washington, DC 20460

                                        Attorneys for Respondents


## **CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2012, I electronically filed the foregoing Motion with the Clerk of the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, which will send notification of said filing to the attorneys of record, who have registered with the Court's CM/ECF system.

                                    ___/s/ Andrew J. Doyle_____