# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

LUMINANT GENERATION COMPANY
LLC and ENERGY FUTURE HOLDINGS
CORP.,

       Petitioners,

v.

No. 12-60694

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY and LISA P. JACKSON,
ADMINISTRATOR, UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY,

       Respondents.

_____/

## EPA'S REPLY IN SUPPORT OF ITS MOTION
## TO DISMISS FOR LACK OF JURISDICTION

In the United States Environmental Protection Agency's ("EPA") Motion to Dismiss ("Mot."), we demonstrated that the Notice and Finding of Violation ("NOV") issued to Petitioners Luminant Generation Company LLC and Energy Future Holdings Corporation ("Luminant") pursuant to the Clean Air Act ("CAA") communicated EPA's nonbinding findings at a preliminary stage of the enforcement process regarding compliance at two of Luminant's power plants in Texas. See Mot. at 2, 6, 9-13. We explained, for example, that the NOV is a creature of statute, in that the CAA requires its issuance as a precondition for EPA taking any enforcement action enumerated in Section 113(a)(1), 42 U.S.C. § 7413(a)(1). In addition, we demonstrated that every court of appeals that has addressed the reviewability of NOVs has concluded that they lack finality, see Mot. at 2, 7-8, and that the NOV at issue lacks finality under the two-part test established in Bennett v. Spear, 520 U.S. 154, 177-78 (1997), and applied most recently in Sackett v. EPA, 132 S. Ct. 1367, 1371-72 (2012). See Mot. at 8-13.

Nothing in Luminant's Opposition ("Opp.") or its many attachments alters these conclusions or satisfies Luminant's burden of establishing the Court's subject matter jurisdiction under the judicial review provision of the CAA, which allows review only of "final action of the Administrator." 42 U.S.C. § 7607(b)(1). The NOV lacks finality, and the Court therefore lacks jurisdiction.

I.  <u>LUMINANT MISCHARACTERIZES THE NOV</u>

Luminant mischaracterizes the NOV. EPA did not direct Luminant to "take action to come 'into compliance.'" Opp. at 2, 9, 18. Luminant quotes an excerpt from the NOV's cover letter, but the paragraph in which it appears begins: "EPA is offering you an opportunity to confer with us about the violations cited in the Notice." Opp. Attach B. at 1. An opportunity to confer is not a directive.

Luminant's assertion that "[t]he NOV contains 'findings of violations,' not 'allegations[,]'" Opp. at 9, is belied by <u>Sierra Club v. EPA</u>, 557 F.3d 401 (6th Cir. 2009), and <u>Sierra Club v. Johnson</u>, 541 F.3d 1257 (11th Cir. 2008). There, courts of appeals examined the CAA and credited EPA's interpretation that an NOV's "findings of violation" are, in substance, nonbinding allegations.[1] Contrary to Luminant's contention (Opp. at 12 n.10), these authorities remain pertinent even though they involved judicial review under 42 U.S.C. § 7661d(b)(2) rather than, as here, a motion to dismiss under 42 U.S.C. § 7607(b)(1). Central to both holdings was an accurate characterization of NOVs.

---

[1] <u>See, e.g.</u>, 557 F.3d at 407 ("EPA is no more bound by a prior violation finding than by a prior no-violation finding."); 541 F.3d at 1267 ("Although § 7413 talks in terms of the Administrator making a finding, it merely describes the EPA's process for leveling allegations against any party it perceives to be violating clean air requirements.").

Luminant's attempt to equate the NOV with an applicability determination like that rendered in Harrison v. PPG Indus. Inc., 446 U.S. 578 (1980), fails. An applicability determination is generally made at the request of a source seeking EPA's final answer regarding whether a particular CAA rule applies to it. See 40 C.F.R. §§ 60.5, 61.06. An applicability determination operates as an adjudication that, absent a change in law or fact or other basis for reconsideration, binds EPA and the requesting source. See 42 U.S.C. § 7607(b)(2); United States v. E. Ky. Power Coop., 498 F. Supp. 2d 976, 984 (E.D. Ky. 2007). An NOV, by contrast, is issued sua sponte at EPA's discretion, communicates only initial determinations, and binds neither the agency nor the source under investigation. See Sierra Club, 557 F.3d at 407 ("That the EPA must premise an enforcement action on a 'finding' of a violation at a given point in time does not bind the agency for all time.").[2]

There is likewise no support for Luminant's characterization of the NOV as a "fait accompli." Opp. at 13. Similar to allegations in an administrative complaint, which have long been regarded as non-final (Mot. at 13), allegations in an NOV are "always subject to revision based on new information." Sierra Club, 557 F.3d at 407. Moreover, EPA has discretion to do nothing at all following the

---

[2] That EPA typically uses letters to communicate applicability determinations does not demonstrate that NOVs are "more concrete and definitive." Opp. at 11.

issuance of an NOV. See City of Seabrook v. Costle, 659 F.2d 1371, 1375 (5th Cir. 1981). Thus, at this preliminary, non-final stage of the enforcement process, there is every reason (and incentive) for EPA to engage in meaningful dialogue with Luminant and revise its enforcement plan as warranted.[3]

## II. LUMINANT FAILS TO ESTABLISH THAT THE NOV MEETS THE TWO-PART TEST FOR FINALITY SET FORTH IN *BENNETT V. SPEAR*

The NOV, accurately characterized, lacks finality under Bennett v. Spear's two-part test. Once again, we begin with the second part of the test.

### A. THE NOV DID NOT DETERMINE LEGAL RIGHTS OR OBLIGATIONS OR TRIGGER LEGAL CONSEQUENCES

To meet its jurisdictional burden, Luminant must establish, inter alia, that the NOV rises to the level of action "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" Bennett v. Spear, 520 U.S. at 177-78 (citations omitted). Luminant has not met its burden.

Luminant argues that "an NOV does in fact trigger a legal obligation – the obligation to seek amendment of the plant's Title V permit." Opp. at 17. This is baseless. Title V is an operating permit program that imposes ongoing duties on

---

[3] An opportunity to confer following issuance of an administrative compliance order ("ACO") under the Clean Water Act ("CWA"), as discussed in Sackett, 132 S. Ct. at 1372, is distinguishable. Contra Opp. at 13. Failure to comply with a valid ACO can, in and of itself, lead to significant penalties. See 33 U.S.C. § 1319(d); 132 S. Ct. at 1370. That is not the case with an NOV. Mot. at 10 (discussing the lack of "separate and additional penalties for 'violating' an NOV").

owners and operators of major sources such as power plants. One of those continuing duties is to submit complete permit applications. 42 U.S.C. §§ 7661b(b), (c); 40 C.F.R. §§ 70.5(a), 70.7(c). Further, sources have a continuing duty to supplement their permit applications to address errors and to incorporate any other requirements of the CAA that may come to apply to the plant. See, e.g., 40 C.F.R. § 70.5(b) ("Any applicant who fails to submit any relevant facts or who has submitted incorrect information in a permit application shall, upon becoming aware of such failure or incorrect submittal, promptly submit such supplementary facts or corrected information."); id. § 70.5(a)(1)(ii) ("[S]ources required to . . . have a permit under the [PSD program] shall file a complete application to obtain the [Title V] permit or permit revision within 12 months after commencing operation or on or before such earlier date as the permitting authority may establish.").

Here, EPA alleges that, on approximately seven occasions, Luminant "completed physical changes and/or changes in the method of operation" at two plants. NOV ¶ 36. EPA further alleges that, as a consequence of those modifications, best available control technology ("BACT") and other requirements of the CAA's Prevention of Significant Deterioration ("PSD") program came to apply to the plants. Id. ¶¶ 37-41. If EPA's allegations are correct, then under Title V Luminant had an obligation to seek an amendment to its operating permit to

incorporate PSD requirements or at least inform the permitting authority about the modifications it had completed. On the other hand, if a preponderance of evidence in an enforcement proceeding shows that Luminant never modified the plants at all, then Luminant never had an obligation to seek a permit amendment. Either way, the NOV itself is not a triggering event. What counts are the modifications and the source's "aware[ness]" of its failure to inform the permitting authority about them. See 40 C.F.R. § 70.5(b).

Not a single sentence in the NOV states or implies what Luminant asserts, i.e., that the NOV's issuance triggered Luminant's obligation to seek a permit amendment. Contra Opp. at 15 (citing NOV ¶¶ 29, 46). Paragraph 29 simply restates the contents of 40 C.F.R. § 70.5(b). Paragraph 46 alleges that "Luminant failed, and continues to fail, to submit timely and complete Title V permit applications for the [two plants] with information pertaining to the modifications," and that "Luminant failed, and continues to fail, to supplement or correct the Title V permit applications."

Luminant's argument also lacks support from "litigation positions [EPA] is currently taking in the [CAA] enforcement context." Opp. at 14. Quite the contrary, in United States v. Louisiana Generating, LLC, Civil Action No. 09-100-RET-CN (M.D. La.), the United States took the same position that EPA does here. There, the United States disputed the source's argument that "it had no

responsibility to identify PSD requirements related to the major modifications performed at Units 1 and 2 because at that time neither EPA nor [the permitting authority] had made any determination regarding the potential application of PSD[.]" Opp. Attach. H at 21 (of 38). The United States explained that the source's "duty to identify all applicable requirements was not dependent on advance notice by the EPA or [the permitting authority] since the source has the burden under the regulations of identifying applicable requirements." Id. The United States then went on to assume the correctness of the source's argument and contended in the alternative: "Even if [the source's] duty to submit an application that included a compliance schedule for applying BACT were triggered by notice from the EPA or [the permitting authority], the EPA provided such notice to [the source] when it issued its initial Notice of Violation . . . ." Id. at 21-22.[4]

Equally inapposite is Luminant's reliance on the Texas permitting authority's discretion to consider "compliance history." Opp. at 18. Luminant does not dispute that, under Texas' CAA implementation plan, it will have the opportunity to refute compliance notations made by the permitting authority,

---

[4] Luminant similarly bases its analogy to Sackett, 132 S. Ct. at 1372, on a faulty premise. See Opp. at 17-18 & n.14. It is simply not correct that "double penalties accrue for violating Title V and its regulations by virtue of the issuance of an NOV and the information it imparts to the recipient." Opp. at 17 (emphasis in original).

including notations informed by EPA's NOV. Compare Mot. at 12 n.4 with Opp. at 18. "It is firmly established that agency action is not final merely because it has the effect of requiring a party to participate in an agency proceeding." Aluminum Co. v. United States, 790 F.2d 938, 941 (D.C. Cir. 1986).

### B. THE NOV DOES NOT MARK THE CONSUMMATION OF THE AGENCY'S DECISIONMAKING PROCESS

Because Luminant has failed to establish finality under the second part of the Bennett v. Spear test, the Court need not reach the first part of the test, which requires that the NOV "mark the 'consummation' of the agency's decisionmaking process," rather than be "merely tentative or interlocutory [in] nature." 520 U.S. at 177-78 (citations omitted). In any event, Luminant has failed to establish the first part of the test as well.

Contrary to Luminant's contention, the NOV's "plain language" does not establish that EPA has reached the end of any relevant process. Opp. at 9. Under EPA's reasonable interpretation of Section 113(a)(1) of the CAA, "'[f]inds' in this setting refers to an initial determination[.]" Sierra Club, 557 F.3d at 407.

Luminant mistakenly relies on the following excerpt from Sackett: "As the text (and indeed the very name) of the compliance order makes clear, the EPA's 'deliberation' over whether the Sacketts are in violation of the [Clean Water] Act is at an end[.]" 132 S. Ct. at 1373 (citation omitted). See Opp. at 9-11. Here, of

course, EPA has not issued a compliance order. Rather, the NOV was a necessary prerequisite to the commencement of enforcement action under Section 113(a)(1) of the CAA. It thus marks the start of any number of courses of action – discussions with the source about whether there are in fact violations and, if so, how those might be cured; issuance of a compliance order; the preparation and filing of an enforcement action; or a decision not to take further action, to name just four – rather than the end of any deliberations.[5]

It is also of no moment that EPA issued the NOV after having collected information from Luminant on several prior occasions. <u>Contra</u> Opp. at 10-11. By statute, EPA may issue an NOV based on "any information available to the Administrator." 42 U.S.C. § 7413(a)(1). EPA may also collect information "on a one-time, periodic or continuous basis." 42 U.S.C. § 7414(a)(1).

---

[5] Luminant's reliance on this excerpt from <u>Sackett</u> is mistaken for the additional reason that it ignores the preceding sentence, where the Supreme Court emphasized that "the <u>next</u> step will either be taken by the Sacketts (if they comply with the order) or will involve judicial, not administrative, deliberation (if the EPA brings an enforcement action)." 132 S. Ct. at 1373 (emphasis in original). Here, the next step will not necessarily be by Luminant – since the NOV contains no directive – and it will not necessarily involve judicial deliberation – since EPA "may," for example, "issue an order" or "issue an administrative penalty." 42 U.S.C. § 7413(a)(1).

Moreover, Luminant's contention would lead to the odd and unworkable result of NOVs being subject to review based on the volume of information before EPA at different points in time. As Luminant sees it, NOVs based on less-developed information could remain unreviewable, while NOVs based on more-developed information could be subject to immediate review. That approach is nonsensical. Indeed, the Supreme Court has disfavored a CAA jurisdictional test "that turns on a case-by-case inquiry into the adequacy of the administrative record." Harrison, 446 U.S. at 587 n.4.

\* \* \*

The Court should grant EPA's Motion and dismiss Luminant's Petition for Review for lack of subject matter jurisdiction.[6]

---

[6] EPA objects to Luminant's alternative request to carry EPA's Motion with the case, Opp. at 20 n.17, which would presumably require EPA to produce an administrative record. Until the Court resolves the threshold question of finality, EPA should not have to produce a record. Although the record would contain information from Luminant's files, it could also include EPA's analyses treated as confidential and privileged. Indeed, a district court recently upheld EPA's withholding of similar analyses from an NOV recipient that had sought to obtain them through a Freedom of Information Act ("FOIA") request. See, e.g., Ameren Missouri v. EPA, No. 4:11CV02051AGF, 2012 WL 4372518, at *6-*9 (E.D. Mo. Sept. 25, 2012). Absent an express finding by this Court that Luminant's Petition for Review falls within its limited subject matter jurisdiction, Luminant should not be allowed to access documents that it would not be entitled to obtain through a FOIA request.

Respectfully submitted,

Date: 12/7/12

IGNACIA S. MORENO
Assistant Attorney General

_____
Andrew J. Doyle, Attorney
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, DC 20044
(202) 514-4427 (p)
(202) 514-8865 (f)
andrew.doyle@usdoj.gov

OF COUNSEL:

Susan Stahle
Office of General Counsel
United States Environmental Protection Agency
1200 Pennsylvania Ave., NW
Washington, DC 20460

Attorneys for Respondents

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2012, I electronically filed the foregoing Reply with the Clerk of the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, which will send notification of said filing to the attorneys of record, who have registered with the Court's CM/ECF system.

                                        ___/s/ Andrew J. Doyle_____