No. 12-60694

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

LUMINANT GENERATION COMPANY LLC and ENERGY FUTURE
HOLDINGS CORP.,

Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LISA
JACKSON, Administrator, United States Environmental Protection Agency,

Respondent.

**MOTION FOR LEAVE TO INTERVENE BY SIERRA CLUB**

Elena Saxonhouse
CA Bar No. 235139
Patrick Gallagher
CA Bar No. 146105
Sierra Club Environmental Law Program
85 Second Street, 2nd Floor
San Francisco, CA 94105
(415) 977-5765 (phone)
(415) 977-5793 (facsimile)

Filed: January 30, 2013

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this court may evaluate possible disqualification or recusal.

1.    <u>Petitioners:</u> Luminant Generation Company LLC and Energy Future Holdings Corporation.

2.    <u>Respondents:</u> United States Environmental Protection Agency and Lisa Jackson, Administrator, United States Environmental Protection Agency.

3.    <u>Counsel for Petitioners:</u> Phillip Stephen Gidiere, III, Thomas Lee Casey, III, and Carl Grady Moore, III of Balch & Bingham, LLP, Stephanie Z. Moore, General Counsel of Luminant Generation Company LLC, Daniel J. Kelly, Associate General Counsel of Energy Future Holdings Corporation, and Peter D. Keisler and C. Frederick Beckner III of Sidley Austin LLP.

4.    <u>Counsel for Respondents:</u> Ignacia S. Moreno, Assistant Attorney General, Andrew J. Doyle of the U.S. Department of Justice Environment & Natural Resources Division, and Susan Stahle, Office of General Counsel, and Scott Fulton of the U.S. Environmental Protection Agency.

5.    <u>Prospective Intervenor:</u> Sierra Club is a non-profit organization that maintains an open membership invitation to individuals and the public in general.

6.    <u>Counsel for Intervenors:</u> Elena Saxonhouse and Patrick Gallagher.

i

Respectfully submitted,

s/Elena Saxonhouse
Elena Saxonhouse
CA Bar No. 235139
Patrick Gallagher
CA Bar No. 146105
Sierra Club Environmental Law Program
85 Second Street, 2nd Floor
San Francisco, CA 94105
(415) 977-5765 (phone)
(415) 977-5793 (facsimile)

*Attorneys for Sierra Club*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.............................................................i

TABLE OF CONTENTS...........................................................................................iii

TABLE OF AUTHORITIES......................................................................................iv

MOTION FOR LEAVE TO INTERVENE BY SIERRA CLUB ...............................1

  I. BACKGROUND .................................................................................................2

  II. GROUNDS FOR INTERVENTION ...................................................................5

     A.    The Statutory Design of the Clean Air Act's Enforcement Provisions
           Includes a Well-Defined Role for Citizens.......................................................5

     B.    Sierra Club Meets the Standards for Intervention in a Trial Court
           Proceeding. ......................................................................................................6

      1. Timeliness.....................................................................................................7

      2. Interest in Petitioners' Suit..........................................................................7

      3. The Disposition of this Action May Impair Sierra Club's Ability to
         Protect Its Interests.......................................................................................10

      4. EPA May Inadequately Represent Sierra Club's Interests..............................11

CONCLUSION .........................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Asbestec Constr. Servs., Inc. v. EPA*, 849 F.2d 765 (2d Cir. 1988) ..........................................5

*Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150 (1970) ...............................12

*BCCA Appeal Group v. EPA*, 355 F.3d 817 (5th Cir. 2003) ....................................................2

*Bennett v. Spear*, 520 U.S. 154 (1997) .................................................................................5

*Ceres Gulf v. Cooper*, 957 F.2d 1199 (5th Cir. 1992) ..........................................................13

*Doe #1 v. Glickman*, 256 F.3d 371 (5th Cir. 2001) ...............................................................15

*Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998) .............................................................12

*Ford v. City of Huntsville*, 242 F.3d 235 (5th Cir. 2001) .....................................................18

*Galveston-Houston Ass'n for Smog Prevention v. EPA*,
   289 Fed. App'x 745, 2008 WL 3471872 (5th Cir. 2008) ..................................................1

*Grutter v. Bollinger*, 188 F.3d 394 (6th Cir. 1999) ..............................................................15

*Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416 (5th Cir. 2002) .....................14

*In re Lease Oil Antitrust Litigation*, 570 F.3d 244 (5th Cir. 2009) ........................................16

*Kleissler v. U.S. Forest Service*, 157 F.3d 964 (3d Cir. 1998) ................................................16

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................................12

*Newby v. Enron Corp.*, 443 F.3d 416 (5th Cir. 2006) ..................................................... 12, 18

*Pacificorp v. Thomas*, 883 F.2d 661 (9th Cir. 1988) .............................................................5

*Royster-Clark AgriBusiness v. Johnson*, 391 F. Supp. 2d 21 (D.D.C. 2005) ..........................5

*Ruiz v. Estelle*, 161 F.3d 814 (5th Cir. 1998) ....................................................................12

*Sierra Club v. Epsy*, 18 F.3d 1202 (5th Cir. 1994) ................................................ 9, 11, 13, 14

*Sierra Club v. Glickman*, 82 F.3d 106 (5th Cir. 1996) ........................................................16

*Solar Turbines, Inc. v. EPA*, 879 F.2d 1073 (3rd Cir. 1989) ..................................................10

*Stupak-Thrall v. Glickman*, 226 F.3d 467 (6th Cir. 2000) ....................................................15

*Texas v. EPA*, 690 F.3d 670 (5th Cir. 2012) .........................................................................1

*Texas v. U.S. Dep't of Energy*, 754 F.2d 550 (5th Cir. 1985) ................................7, 8, 13, 15

*Union Elec. Co. v. EPA*, 593 F.2d 299 (8th Cir. 1979) ..........................................................5

*Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246 (10th Cir. 2006) .....................................14

*West Penn Power Co. v. Train*, 522 F.2d 302 (3d Cir. 1975) ................................................5

## Statutes

42 U.S.C. § 7413 ...............................................................................................................2

42 U.S.C. § 7475(a) ..........................................................................................................2

42 U.S.C. § 7475(a)(1) .....................................................................................................2

42 U.S.C. § 7479(1) ..........................................................................................................2

42 U.S.C. § 7479(2)(C) .....................................................................................................2

42 U.S.C. § 7479(3) ..........................................................................................................2

42 U.S.C. § 7604 .......................................................................................................... 6, 10

42 U.S.C. § 7604(a) ...................................................................................................2, 4, 9

42 U.S.C. § 7604(b)(1)(B) .....................................................................................2, 4, 6, 9, 13

42 U.S.C. § 7607(b) ..........................................................................................................3

**Other Authorities**

7C C. Wright & A. Miller, Federal Practice & Procedure (3d ed. 2007) §1908.2............9

## MOTION FOR LEAVE TO INTERVENE BY SIERRA CLUB

Sierra Club respectfully moves to intervene in support of respondent U.S.

Environmental Protection Agency (EPA) in the above-captioned case, pursuant to

Fed. R. App. P. 15(d) and Fifth Circuit Rule 15.5.  Luminant Generation Partners

LLC and its parent company Energy Future Holdings Corporation (collectively

"Luminant") seek judicial review of EPA's notice that they had violated the Clean Air

Act. Sierra Club concurs with EPA's motion to dismiss for lack of jurisdiction

because the notice is not a final agency action.[1] Sierra Club seeks to intervene in the

case in part to protect its interest in the outcome of this jurisdictional question.[2] The

Court has routinely allowed citizen groups and other groups to intervene in cases

reviewing EPA actions. *See Texas v. EPA*, 690 F.3d 670 (5th Cir. 2012); *Galveston-*

*Houston Ass'n for Smog Prevention v. EPA*, 289 Fed. App'x 745, 2008 WL 3471872 (5th

Cir. 2008); *BCCA Appeal Group v. EPA*, 355 F.3d 817 (5th Cir. 2003).[3]

---

[1] *See* Respondents' Mot. to Dismiss, filed Oct. 12, 2012 (Doc. No. 00512018597); Order Carrying Mot. to Dismiss with the Case, Dec. 19, 2012 (Doc. No. 00512090226).

[2] Pursuant to Fifth Circuit Rule 27.4, Sierra Club has conferred with counsel for the other parties on this motion. Because there is no final agency action for the Court to review, EPA believes that Sierra Club's motion to intervene should be carried with the case, along with EPA's motion to dismiss, and denied as moot in the event that the Court ultimately agrees with EPA that subject matter jurisdiction is lacking. Assuming, for the sake of argument, that the Court has jurisdiction, EPA takes no position on Sierra Club's motion. Luminant opposes this motion and plans to file an opposition.

[3] Although the published opinions of the Court do not address intervention, the case captions show that the Court granted intervention to these groups. *See also* Exhibit 1 (Order granting Environmental Integrity Project and Environmental Defense Fund's motion to intervene).

# I. BACKGROUND

Luminant operates a fleet of large coal-fired power plants in Texas. Its Big Brown and Martin Lake plants consistently rank among the nation's top five emitters of mercury, a neurotoxin, and among the top ten emitters of sulfur dioxide pollution. Big Brown is the second largest single source of nitrogen oxides, a precursor to smog, in the Dallas-Fort Worth area. The plants' emissions are very high mainly because Luminant has not been required to update the plants' pollution control equipment to modern standards. Constructed between 1971 and 1979, these plants benefited from the Clean Air Act's "grandfathering" provisions, which exempted facilities commencing construction before August 7, 1977. 42 U.S.C. § 7475(a). However, the Clean Air Act also requires that if a plant owner modifies a plant and in doing so causes emissions to increase, the owner must apply for a permit and demonstrate that it is meeting the latest pollution control standards. *See* 42 U.S.C. §§ 7475(a)(1), 7479(1),(2)(C), (3). This set of requirements is generally known as the New Source Review program.

Section 113 of the Clean Air Act authorizes EPA to bring a civil lawsuit for injunctions and penalties both to cure violations of the Act and deter other sources from evading the law. 42 U.S.C. § 7413. Likewise, citizen groups may enforce violations of the Act if neither EPA nor the state has commenced, and diligently prosecuted, an enforcement action on the same violations. 42 U.S.C. § 7604(a), (b)(1)(B). On July 13, 2012, EPA took a preliminary step towards such enforcement

2

by sending Luminant a notice of violation of the New Source Review provisions in the Act.[4] The notice indicates that Luminant undertook projects to modify their plants on seven different occasions without obtaining the necessary New Source Review approvals or revisions to its Texas state permits.[5]

Luminant asks the Court to review EPA's notice of violation pursuant to Section 307(b) of the Clean Air Act, which permits judicial review of a "final action of the Administrator." 42 U.S.C. § 7607(b). As recently affirmed by the D.C. Circuit, under Section 307(b), a final agency action "must mark the consummation of the agency's decisionmaking process" and "must be one by which rights or obligations have been determined, or from which legal consequences will flow." Order, *Las Brisas Energy Center v. Jackson*, Case No. 12-1248 (D.C. Cir. Dec. 13, 2012) (unpublished) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)), attached hereto as Exhibit 3. Every court to review the issue has determined that a preliminary notice of violation is not a "final action" within the meaning of Section 307(b). *See Pacificorp v. Thomas*, 883 F.2d 661, 661 (9th Cir. 1988); *Asbestec Constr. Servs., Inc. v. EPA*, 849 F.2d 765, 770 (2d

---

[4] Luminant has attached a copy of the notice to its Petition for Review.

[5] The details of the projects have not been made public because they include information that Luminant has labeled "Confidential Business Information" (CBI). Sierra Club and Environmental Integrity Project sought the underlying information from EPA through a Freedom of Information Act request in 2010. EPA has neither released the information nor made a determination on whether Luminant correctly classified the information as CBI. EPA's unwillingness to process the information request on a reasonable and defined schedule resulted in Sierra Club and Environmental Integrity Project bringing suit against EPA in the Northern District of California. *Sierra Club v. EPA*, Case No. 3:11-cv-00846-MEJ (N.D. Cal.); Exhibit 2 (Complaint).  That litigation is ongoing.

Cir. 1988); *Union Elec. Co. v. EPA*, 593 F.2d 299, 304 (8th Cir. 1979); *West Penn Power Co. v. Train*, 522 F.2d 302, 310-11 (3d Cir. 1975); *Royster-Clark AgriBusiness v. Johnson*, 391 F. Supp. 2d 21, 28-30 (D.D.C. 2005).[6]

Should Luminant succeed in persuading this Court that Section 307(b) nevertheless confers jurisdiction over its pre-enforcement Petition, such a result would represent a drastic departure from settled law and impede enforcement of the Clean Air Act. It would substantially hinder both EPA's, and potentially citizens', enforcement activities, allowing industry to drag EPA into court preemptively, before EPA has even finalized its enforcement position. Moreover, if the Court finds it has jurisdiction over Luminant's petition, the underlying merits of the notice – i.e., the facts of Luminant's violations – likely will be litigated in this proceeding. The outcome could substantially affect Sierra Club's rights to enforce those same violations. *See* 42 U.S.C. § 7604(a), (b)(1)(B).

Sierra Club is the nation's oldest and largest grassroots environmental organization. Its mission is to preserve, protect, and enhance the natural environment. Sierra Club has more than 584,000 members nationwide, including more than 21,000 members in Texas, as well as several offices based there. Sierra Club has a long history of working to protect and improve air quality in Texas, and has made a significant investment in the enforcement of environmental laws against the highly polluting

---

[6] Some of these cases concern "administrative compliance orders," which are the next step in the enforcement process *beyond* a notice of violation. If a compliance order is not a final action of the Administrator, a mere notice of violation certainly is not.

Luminant coal-fired power fleet over the past five years. Sierra Club has devoted substantial resources to the Luminant (formerly TXU) plants both in its Clean Air Act enforcement efforts,[7] and public education campaigns. *See* Decl. of N. Carman (attached hereto as Exhibit 4).

## II. GROUNDS FOR INTERVENTION

Rule 15(d) of the Federal Rules of Appellate Procedure governs interventions in administrative appeals, but does not set forth a standard of review for motions to intervene. This Court has identified two considerations in the absence of a standard in the rule: first, the statutory design of the relevant act, and second, the policies underlying intervention in the trial courts pursuant to Fed. R. Civ. P. 24. *Texas v. U.S. Dep't of Energy*, 754 F.2d 550, 551 (5th Cir. 1985). Based on these considerations, the Court should allow Sierra Club to intervene here, as it has in past cases.

### A.    The Statutory Design of the Clean Air Act's Enforcement Provisions Includes a Well-Defined Role for Citizens.

The Act's enforcement scheme includes a well-defined role for citizens, which justifies Sierra Club's participation in this case. *See Texas*, 754 F.2d at 551 (denying intervention because statutory scheme omitted "role" for would-be intervenor). If the

---

[7] Sierra Club is currently litigating two citizen suits against Luminant regarding Clean Air Act violations at the Big Brown and Martin Lake plants. *See Sierra Club v. Energy Future Holdings Corp.*, No. 6:12-cv-108 (W.D. Tex.); *Sierra Club v. Energy Future Holdings Corp.*, No. 5:10CV156 (E.D. Tex.). Sierra Club has also given notice of its intent to sue on violations at two other facilities owned by Luminant, the Sandow 4 and Monticello plants, and has submitted extensive comments on the Texas Commission on Environmental Quality's renewal of the plants' air permits pursuant to Title V of the Clean Air Act.

Court takes jurisdiction, the issues before it will include the evidentiary and legal bases for EPA noticing violations at the Luminant plants. Sierra Club and other citizen groups have been litigating the evidentiary and legal bases of alleged Clean Air Act violations since the Act's inception.

Section 304 of the Act grants citizens the right to bring a civil action against any person who has violated the Act, or orders issued by a state or EPA pursuant to the Act. 42 U.S.C. § 7604 (providing that district courts "shall" have jurisdiction over such actions). A citizen's right to sue is limited only if the Administrator or State has commenced and is diligently prosecuting a civil action in court to address the same violations. *Id.* § 7604(b)(1)(B). Even then, citizens may intervene "as a matter of right" in the governmental enforcer's action. *Id.* Congress clearly intended that citizens have a right to participate in civil actions to enforce corporations' violations of the Act. Therefore, because this proceeding concerns the enforcement of Clean Air Act violations, Sierra Club has a proper "role" in the lawsuit under the statutory scheme. *Texas*, 754 F.2d at 551.

**B.      Sierra Club Meets the Standards for Intervention in a Trial Court Proceeding.**

A party may intervene as of right under Fed. R. Civ. P. 24 when either a federal statute confers an unconditional right to intervene, or when the party can establish the four factors discussed below. *Sierra Club v. Epsy*, 18 F.3d 1202, 1204-05 (5th Cir.

1994). Although there is no absolute right to intervene under Clean Air Act section

307(b), Sierra Club satisfies each factor.

### 1. Timeliness.

Luminant filed its Petition for Review on September 11, 2012. Sierra Club has

filed its motion to intervene on behalf of EPA well in advance of the due date of

EPA's brief, and even in advance of the administrative record being filed. 5th Cir. R.

15.5.[8] The motion is therefore timely, and by filing at this early stage of litigation,

Sierra Club has avoided causing prejudice to any party.

### 2. Interest in Petitioners' Suit.

Sierra Club has an interest in the subject matter of the litigation that is "direct,

substantial and legally protectable." *Epsy*, 18 F.3d at 1207. First, the organization has a

strong interest in upholding the Clean Air Act's enforcement scheme as it was

designed by Congress. *See* Exhibit 4. As confirmed by several other Circuits, the Act

does not allow for judicial review of a notice of violation. To allow review here would

"intrude on the procedural sequence created by Congress whereby parties receiving

notice of noncompliance are first encouraged to resolve their problems with the states

and with EPA in an informal, less costly manner." *Solar Turbines, Inc. v. EPA*, 879 F.2d

1073, 1078 (3rd Cir. 1989). The burden of facing appellate level litigation over each

---

[8]As confirmed by discussion with the Fifth Circuit Office of the Clerk, Local Rule 15.5
supersedes the 30-day filing deadline outlined in Federal Rule of Appellate Procedure 15(d).
*See also* Letter from L. Cayce to Counsel for Sierra Club dated Nov. 26, 2012 (Doc. No.
00512062120) (stating that motion for clarification or in the alternative to extend time to file
a motion to intervene was "premature").

notice of violation, with no opportunity for informal negotiation, would chill EPA's

enforcement activities. This result is directly contrary to Sierra Club's efforts to

promote strong enforcement of the Act and protect public health from the ill effects

of air pollution. Sierra Club volunteers and staff nationwide work on legislative and

legal advocacy aimed at reducing air pollution from coal-fired power plants, and often

use the citizen suit provision to enforce the Act, or intervene in governmental

enforcement actions. *See* Exhibit 4.

Second, Sierra Club has members who live and work near the Big Brown and

Martin Lake plants. *See, e.g.*, Exhibits 5 & 6 (Decls. of Barbara Lawrence and Wilton

Adams). These individuals also have a direct, substantial, and legally protectable

interest in the proper enforcement of Clean Air Act violations at the plants. They

personally observe, breathe, and are adversely affected by the pollution coming from

the plants' stacks. *Id.* Ms. Lawrence and Mr. Adams want the Big Brown and Martin

Lake plants, respectively, to reduce their pollution as much as possible. *Id.* Ensuring

that Luminant applies for the necessary approvals for emission-increasing

modifications of the plants, and invests in proper pollution controls, will directly

benefit these and other Sierra Club members' aesthetic, recreational, and

environmental interests. If Luminant is permitted to stymie EPA's enforcement

efforts, on the other hand, the Martin Lake and Big Brown plants will continue to

pollute at their current high levels and Sierra Club members will suffer.

Third, Sierra Club has an interest in ensuring that Luminant cures its violations

and installs modern pollution control equipment, even if EPA does not pursue an

enforcement action. *See* Exhibit 4.  This case could impair that interest. As explained

above, if neither EPA nor the State of Texas commences, and diligently prosecutes,

an enforcement action against Luminant in court, Sierra Club would have a right to

bring that enforcement case itself. 42 U.S.C. § 7604(a) & (b)(1)(B). Or, if EPA's notice

were to mature into a civil action, Sierra Club would have a statutory right to

intervene in EPA's case. 42 U.S.C. § 7604(b)(1)(B). The facts and law underlying the

notice challenged here may be the very same that would be at issue in either of these

potential enforcement actions in district court. If Luminant's violations and potential

defenses are litigated here, the district court may construe holdings in this case to

affect the enforcement action in which Sierra Club plans to participate. Thus, Sierra

Club has a strong interest in participating here. *See Epsy*, 18 F.3d at 1207 (holding *stare*

*decisis* is a recognizable impairment of an intervenor's interests); 7C C. Wright & A.

Miller, Federal Practice & Procedure (3d ed. 2007) §1908.2 (issues of fact and law that

are common to the instant case and others support intervention of right); *Newby v.*

*Enron Corp.*, 443 F.3d 416, 422-23 (5th Cir. 2006) (holding that movant's interest in

common questions of fact and law are grounds for intervention).[9]

---

[9] The Fifth Circuit does not require standing under Article III of the Constitution for intervention. *Newby,* 443 F.3d at 422 (citing *Ruiz v. Estelle*, 161 F.3d 814, 832 (5th Cir. 1998)). Even if there were such a requirement, Sierra Club would be able to demonstrate both direct and associational standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). As described above, Sierra Club has concrete interests in air quality that Luminant's legal maneuver threatens directly, notably a delay in cleanup of pollution and interference with its

### 3.   The Disposition of this Action May Impair Sierra Club's Ability to Protect Its Interests.

There is no question that the disposition of this action "'may, as a practical matter, impair or impede'" Sierra Club's ability to protect its, and its members', interests. *Texas*, 754 F.2d at 552 (quoting Fed. R. Civ. P. 24(a)(2)).  As described above in Section II.B.2, the disposition of the action may impair Sierra Club's ability to protect its interests because (1) the merits of EPA's notice of violation may be litigated here and affect the scope and outcome of an enforcement action which Sierra Club has a right to prosecute if EPA does not do so, 42 U.S.C. § 7604; (2) Sierra Club's members live and work near the plants, suffer from the plants' pollution, and may not receive the benefits of EPA enforcement if Luminant is permitted to preemptively challenge EPA's notice. If the Court finds it has jurisdiction, the disposition of this action may further impair Sierra Club's interests because factual and legal holdings may influence the scope and outcome of an enforcement action brought by Sierra Club; (3) Sierra Club has an organizational interest in strong enforcement of the Clean Air Act generally, which Luminant's petition seeks to undermine. *See Epsy*, 18 F.3d at 1207 (holding *stare decisis* is a recognizable impairment

---

enforcement rights under the Clean Air Act. The harm is fairly traceable to Luminant's efforts to prematurely challenge EPA's first step towards an enforcement action and would be redressed by a decision rejecting Luminant's petition. For the same reasons, and because the statute specifically includes a citizen suit provision, Sierra Club falls squarely within the "zone of interests" protected by the relevant provisions of the Clean Air Act.  *See Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20 (1998) (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970)).

of an intervenor's interests); *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1204 (5th Cir. 1992) (recognizing that "concern for enforcing the statutory scheme" provides grounds for intervention); *see also Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1252 (10th Cir. 2006) (holding that "organizations whose purpose is the protection and conservation of wildlife and its habitat have a protectable interest in litigation that threatens these goals"). An unfavorable ruling on the jurisdictional question in this suit could impair the enforcement of Clean Air Act violations against other polluters in Texas and across the country. Allowing industry to drag EPA into court upon mere notice of a violation – which expressly gives the violating company an opportunity to consult and negotiate with the agency – would foster early litigation at the expense of informal negotiation and deter EPA from investigating and pursuing enforcement actions.

### 4.    EPA May Inadequately Represent Sierra Club's Interests.

The final criterion is whether the representation of the proposed intervenor's interests by the existing parties "*may* be" inadequate. *Espy*, 18 F.3d at 1207. This Court has repeatedly held that a proposed intervenor "has only a minimal burden" to satisfy this requirement. *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 425 (5th Cir. 2002); *Espy*, 18 F.3d at 1207. Although the Fifth Circuit has suggested a presumption that the federal government provides adequate representation for would-be intervenors in suits involving a sovereign interest,[10] this presumption may be

---

[10]*Texas*, 754 F.2d at 553;  That holding is inconsistent with other Circuits. *See Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) (holding Rule 24 should be construed broadly in

overcome by showing that the intervenor's particularized interests may not be subsumed within the broader public interest represented by a government agency. *Doe #1 v. Glickman*, 256 F.3d 371, 380 (5th Cir. 2001). That is true here.

First, Sierra Club's members living and working near Luminant's plants are personally exposed to air pollution from those plants, as are their family members. As a result, they have a stronger interest than the general public in speedy and comprehensive enforcement of Clean Air Act violations at these facilities. *See* Exhibits 5 & 6. In addition, due to concern about pollution from coal-fired power plants specifically, and the communities affected by these Luminant plants, Sierra Club has made the Big Brown and Martin Lake plants priority targets of its Clean Air Act enforcement, advocacy, and public education efforts. *See* Exhibit 4. EPA has a broader agenda and must consider enforcement goals and litigation resources in light of a statewide, regional, and national perspective. EPA also must at times balance other interests, such as economic interests, against the environmental and public health interests Sierra Club seeks to represent. As a result of this broader focus, EPA may be quicker to reconsider its actions to appease petitioners. *See Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996). In addition, the government is subject to changes inherent in electoral politics, from which Sierra Club is immune. *See Kleissler v. U.S. Forest Service*, 157 F.3d 964, 967 (3d Cir. 1998). As a result, EPA may not

---

favor of potential intervenor such that the "proposed intervenor need only show that there is a *potential* for inadequate representation.") (quoting *Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999)) (emphasis in original).

adequately represent Sierra Club's interests during the litigation (or possible settlement) of this case. *In re Lease Oil Antitrust Litigation*, 570 F.3d 244, 251 (5th Cir. 2009) (Even "[a]n interest solely related to the terms of a settlement can support intervention.").

In addition, by granting citizens an absolute right to intervene in any governmental enforcement action, the Clean Air Act explicitly recognizes that the government's interest in enforcement and that of citizens may diverge. 42 U.S.C. § 7406(b)(1)(B). Had Congress believed that the government would adequately represent citizens, Congress would have seen no need to provide this absolute right. Denying Sierra Club the opportunity to participate in Luminant's challenge to EPA's enforcement activity would be inconsistent with the statutory scheme, which distinguishes between citizens' and government's enforcement interests.

Finally, there are special circumstances in this litigation such that Sierra Club's interest may be directly adverse to those of EPA. Sierra Club brought a Freedom of Information Act (FOIA) suit against EPA for failure to release the documents EPA obtained while investigating the Luminant's Clean Air Act violations, and for failure to make a determination as to whether Luminant had properly labeled the information "confidential business information." *See supra* note 2. A subset of these documents forms the basis of EPA's notice of violation that Luminant seeks to challenge here.

When EPA compiles its "administrative record,"[11] some of the very same documents at issue in the FOIA lawsuit would be included – or omitted. Sierra Club is likely to disagree with EPA as to how the issues surrounding confidentiality of these documents should be handled. Transparency concerning both government and corporate activities, particularly those tied to heavy pollution, are important to Sierra Club's mission. *See* Exhibit 4. The group has often advocated for the release of governmental documents regarding coal and its dangers to the public, and would resist an overbroad approach to confidentiality in this litigation. Judging from the existing FOIA litigation between the would-be intervenor and EPA, this position is likely to be at odds with that of EPA. It is sufficient grounds for intervention. *See, e.g.*, *Ford v. City of Huntsville*, 242 F.3d 235, 239-41 (5th Cir. 2001) (deciding that newspaper may intervene to challenge confidentiality agreement between settling parties); *see also Newby*, 443 F.3d at 424 (affirming intervention under Rule 24(b)(2) for purpose of gaining access to documents).

In sum, Sierra Club meets each of the four factors set forth in Fed. R. Civ. App. 24(a) and recognized by this Circuit as grounds for intervention. The Court has commonly granted citizen groups' motions to intervene in disputes between industry and EPA and should do so again here. *See supra* page 1.

---

[11] Sierra Club does not concede that any administrative record is proper given that EPA has not finalized an action yet.

## CONCLUSION

The Court should grant Sierra Club leave to intervene.

Respectfully submitted,

s/Elena Saxonhouse
Elena Saxonhouse
Sierra Club
85 Second Street
San Francisco, CA 94105
elena.saxonhouse@sierraclub.org
(415) 977-5765

Patrick Gallagher
Sierra Club
85 Second Street
San Francisco, CA 94105
pat.gallagher@sierraclub.org
(415) 977-5709

*Attorneys for Sierra Club*

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2013, the foregoing Motion was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of said filing to the attorneys of record who have consented to electronic service, and served by US First Class Mail to any other attorney of record.


<u>s/Elena Saxonhouse</u>
Elena Saxonhouse

# EXHIBIT 1

# United States Court of Appeals
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

September 21, 2010

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

     No. 10-60614   State of Texas, et al v. EPA
          USDC No. 75 Fed. Reg. 41,312

Enclosed is an order entered in this case.

                    Sincerely,

                    LYLE W. CAYCE, Clerk

                    By:_____
                    Dantrell L. Johnson, Deputy Clerk
                    504-310-7689

Mr. Van Beckwith
Mr. James B. Blackburn, Jr.
Mr. David Aiken Carson
Mr. John Reed Clay, Jr.
Mr. William James Cobb III
Mrs. Claudia Wilson Frost
Ms. Samara Lackman Kline


*MOT-2*

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

_____

No. 10-60614

_____

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 21, 2010

Lyle W. Cayce
Clerk

STATE OF TEXAS; TEXAS OIL & GAS ASSOCIATION; TEXAS
ASSOCIATION OF MANUFACTURERS; BCCA APPEAL GROUP,

      Petitioners

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

      Respondent

_____

Petitions for Review of an Order of the
Environmental Protection Administration

_____

O R D E R :

    IT IS ORDERED that, without opposition, the motion of
Environmental Defense Fund and Environmental Integrity Project for leave
to intervene is GRANTED.




        /s/ E. Grady Jolly_____
        E. GRADY JOLLY
        UNITED STATES CIRCUIT JUDGE

*MOT25*

EXHIBIT 2

1   David A. Bahr (Oregon Bar No. 90199)
    Bahr Law Offices, P.C.
2   1035 ½ Monroe Street
    Eugene, OR  97402
3   (541) 556-6439
    (541) 685-1336(facsimile)
4   davebahr@mindspring.com
5   (Application for admission *pro hac vice* pending)

6   Kristin Henry (California Bar. No. 220908)
    Sierra Club Environmental Law Program
7   85 Second St., 2nd Floor
    San Francisco, CA 94105
8   (415) 977-5727
9   (415) 977-5793 (facsimile)
    Kristin.Henry@Sierraclub.org
10

11  Attorneys for Plaintiffs Sierra Club and Environmental Integrity Project

12          **IN THE UNITED STATES DISTRICT COURT**
            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
13                  **SAN FRANCISCO DIVISION**

14  **THE SIERRA CLUB,** and                 Case No. _____
15  **ENVIRONMENTAL INTEGRITY PROJECT,**

16          Plaintiffs,                       **COMPLAINT FOR DECLARATORY AND**
                                              **INJUNCTIVE RELIEF**
17          *vs.*
                                              Freedom of Information Act Case
18  **UNITED STATES ENVIRONMENTAL PRO-**      Administrative Procedure Act Case
    **TECTION AGENCY,**
19
            Defendant.
20

21          The Sierra Club and Environmental Integrity Project (collectively "Plaintiffs"), allege as follows:

22                          **INTRODUCTION**
23
24  **1.**     This action is premised upon, and consequent to, violations of both the Freedom of Information

25  Act ("FOIA"), 5 U.S.C. § 552 *et. seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701

26  *et. seq.* It challenges the unlawful failure of the Defendant, the Environmental Protection Agency

27  ("EPA" or "Agency"), to respond to Plaintiffs' FOIA request and appeal in the manner and within the

28

---

COMPLAINT                                    1        BAHR LAW OFFICES, P.C.
                                                      1035 ½ Monroe Street
                                                      Eugene, OR  97402
                                                      (541) 556-6439

time required by FOIA. In February 2010, Plaintiffs submitted a FOIA request to the EPA seeking ac-

cess to records relating to the operations of coal-fired power plants owned by the Luminant corporation,

or any of its related affiliates (collectively referred to as "Luminant"), and the EPA's regulatory over-

sight and interactions with the company. This request was submitted as part of Plaintiffs' ongoing na-

tional campaign to address the pressing problems of global warming, air pollution, and our national de-

pendence on dirty, non-renewable energy sources such as oil and coal and to promote the use of clean

energy sources. Although the Agency has disclosed certain documents responsive to Plaintiffs' request,

it has unnecessarily, unreasonably, and unlawfully delayed the processing of claims that certain of the

remaining responsive records are subject to withholding as confidential business information ("CBI")

under FOIA's Exemption Four, 5 U.S.C. § 552(b)(4) (2011).

2.    Prompt access to the requested information is crucial to the Plaintiffs because it is directly rele-

vant to their ability to effectively engage in, and provide public oversight of, the EPA's regulation of

coal combustion and associated air pollution. Moreover, on information and belief, the requested docu-

ments will demonstrate that Luminant and/or its affiliates violated the Clean Air Act at one or more of

its facilities in Texas. EPA's disregard of its duty to release these documents will, and potentially has,

harmfully delayed Plaintiffs' ability to pursue available remedies for Luminant's alleged violations of

the law. Thus, it is imperative that these documents be released quickly and efficiently.

3.    Defendant is unlawfully withholding public disclosure of at least 350,000 pages of information

sought by Plaintiffs, information to which they are entitled and for which no valid disclosure exemption

applies. Defendant failed to comply with the statutory mandates and deadlines imposed by FOIA

through its failure to provide a final determination resolving Plaintiffs' FOIA request and appeal within

the time required by law. Accordingly, Plaintiffs seek declaratory relief establishing that Defendant has

violated the FOIA and APA. Plaintiffs also seek injunctive relief directing Defendant to promptly pro-

vide Plaintiffs with the requested material.

**4.**     Plaintiffs, and their constituents in Texas, are and will be substantially harmed if the requested

documents are not released to the public so that Plaintiffs can protect the public health in and around

these plants.

### JURISDICTION, VENUE, INTRADISTRICT ASSIGNMENT, AND BASIS FOR RELIEF

**5.**     This Court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B) (2011) and 28

U.S.C. § 1331 (2011) because this action arises under the FOIA, the APA, and the Declaratory Judg-

ment Act, 28 U.S.C. § 2201, *et seq.*

**6.**     Venue properly vests in this Court pursuant to 5 U.S.C. § 552(a)(4)(B) (2011), which provides

venue for FOIA cases in this district because Sierra Club maintains its principal place of business in San

Francisco, California. Additionally, Sierra Club has members and staff that work or reside within this

judicial district. Assignment is proper in this district and division for the same reasons. L.R. 3-2, 3-5.

**7.**     Declaratory relief is appropriate under 28 U.S.C. § 2201 (2011).

**8.**     Injunctive relief is appropriate under 28 U.S.C. § 2202 (2011) and 5 U.S.C. § 552(a)(4)(B)

(2011).

### PARTIES

**9.**     The Sierra Club, based in San Francisco, California, is the nation's oldest environmental organi-

zation. It has more than 1,500,000 members and supporters nationwide and is dedicated to the protection

and preservation of the natural and human environment. The Sierra Club is dedicated to protecting the

earth's ecosystems and resources and educating the public about its mission. Among the Sierra Club's highest priorities is solving the pressing environmental and health problems associated with the mining, burning, and disposal of coal and its combustion by-products. In support of these efforts, in February 2010, Sierra Club submitted to EPA the FOIA request at issue in this case.

10.    The Environmental Integrity Project is a nonpartisan, nonprofit organization established in March 2002 by former EPA enforcement attorneys to advocate for more effective enforcement of environmental laws. The organization pursues three main goals: to provide objective analysis of how the failure to enforce or implement environmental laws increases pollution and affects the public's health; to hold federal and state agencies, as well as individual corporations, accountable for failing to enforce or comply with environmental laws; and to help local communities in key states obtain the protection of environmental laws. Environmental Integrity Project has worked extensively on coal combustion and associated air pollution issues recently, including the publication of reports and advocacy before state and federal regulatory bodies on the hazards of coal combustion. Environmental Integrity Project is a co-signatory of the February, 2010 FOIA request at issue in this case.

11.    Defendant United States Environmental Protection Agency, is an agency of the executive branch of the United States government, it is in possession and control of the records sought by Plaintiffs, and as such, it is subject to the FOIA pursuant to 5 U.S.C. § 552(f) (2011).

## STATEMENT OF OPERATIVE FACTS

12.    In an exchange of email, oral conversations, and formal written correspondence, in February 2010, Plaintiffs submitted a FOIA request to the EPA seeking information received by the Agency through its requests for information under Section 114 of the Clean Air Act, 42 U.S.C. § 7414 regarding Luminant's fleet of coal-fired power plants. *See* Exhibit A (filed herewith).

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439

13.    To facilitate and expedite the EPA's response to their time-sensitive information request, Plain-

tiffs unilaterally narrowed the scope of their request to:

- Records containing information on the air emissions, fuel, production processes, and ma-
  terials handling and transfers for all Luminant coal-fired power plants; and

- Records pertaining to any air permitting, amendment, or alteration request or information
  that was submitted by Luminant to any local, state or federal regulatory agency as part of
  any air permit application or any other regulatory authorization regarding air emissions.

*See* Exhibit A at 1.

14.    The FOIA requires an agency to issue a final determination resolving an information request

within twenty business days from the date of its receipt. 5 U.S.C. § 552(a)(6)(A)(i) (2011); 40 C.F.R. §

2.104(a) (2011).

15.    The FOIA allows an agency to extend its determination deadline by 10 business days when "un-

usual circumstances" exist and when the agency so notifies a requester in writing. 5 U.S.C. § 552(a)-

(6)(B) (2011); *see also* 40 C.F.R. § 2.104(d) (2011) (establishing basis for extension of determination

deadline).

16.    In limited circumstances, the FOIA allows an agency to impose an "unusual circumstances" de-

cision extension beyond 10 business days when certain conditions are satisfied:

> With respect to a request for which a written notice [purports to apply the "unusual cir-
> cumstances" extension beyond 10 business days], the agency shall notify the person mak-
> ing the request if the request cannot be processed within the time limit specified in that
> clause *and shall provide the person an opportunity to limit the scope of the request so
> that it may be processed within that time limit or an opportunity to arrange with the
> agency an alternative time frame for processing the request or a modified request. To aid
> the requester, each agency shall make available its FOIA Public Liaison, who shall assist
> in the resolution of any disputes between the requester and the agency.*

5 U.S.C. § 552(a)(6)(B)(ii) (2011) (emphasis added).

COMPLAINT                                      5                      BAHR LAW OFFICES, P.C.
                                                                     1035 ½ Monroe Street
                                                                     Eugene, OR  97402
                                                                     (541) 556-6439

**17.**    By letter dated March 23, 2010, the EPA informed Plaintiffs that an extension to its decision deadline was required due to "the need to search for, collect and appropriately examine a voluminous amount of separate and distinct records involved in [Plaintiffs'] request." *See* EPA Letter (March 23, 2010) (filed herewith as Exhibit B).[1] The EPA Letter unilaterally extended its decision deadline to April 9, 2010. *Id*.

**18.**    The EPA did not contact Plaintiffs with an opportunity to limit the scope of their FOIA request so that it could be processed within FOIA's statutory decision deadlines as required by 5 U.S.C. § 552(a)(6)(B)(ii) (2011).

**19.**    The EPA did not contact Plaintiffs with an opportunity to voluntarily develop with the Agency an alternative time frame for processing their request or a modified request as required by 5 U.S.C. § 552(a)(6)(B)(ii) (2011).

**20.**    The EPA did not make its FOIA Public Liaison available to Plaintiffs to assist in the resolution of any disputes between the Requesters and the Agency as required by 5 U.S.C. § 552(a)(6)(B)(ii) (2011).

**21.**    By letter dated April 7, 2010, EPA provided a response to Plaintiffs' FOIA request. *See* Exhibit C (filed herewith).

**22.**    With its April 7, 2010 letter, the EPA provided some information to Plaintiffs responsive to their

---

[1] That letter's citations to authority refer to regulations that were superseded in 2002 and may be disregarded. *See, e.g.*, 67 Fed. Reg. 67,303-01 (Nov. 5, 2002) (notice of final rule).

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

FOIA requests. *Id.* at 1 and Attachment B thereto.

**23.** In its April 7, 2010 letter, the EPA also informed Plaintiffs that there were a significant number of records responsive to their FOIA request for which a disclosure determination had not yet been made due to the EPA's ongoing review of the claims made by Luminant that the information is confidential business information ("CBI") possibly subject to FOIA's Exemption 4. 5 U.S.C. § 552(b)(4) (2011); 40 C.F.R. §§ 2.204(d)(1) (2011). Exhibit C at 1 ("your request is being initially denied with respect to these records because further inquiry by EPA required before a final determination can be made.").

**24.** Defendant's "initial denial" applied to approximately 350,000 pages of information responsive to Plaintiffs' FOIA request that is currently being withheld by EPA. *See, e.g.,* Exhibit C, attachment A (listing withheld records).

**25.** On May 7, 2010, Plaintiffs timely appealed, via email, the adverse action embodied by EPA's "initial denial" letter.

**26.** By letter dated June 8, 2010, EPA denied Plaintiffs' administrative appeal. Exhibit D (filed herewith).

**27.** In both EPA's denial of Plaintiffs' administrative appeal, as well as in its "initial denial" letter, the Agency assured Plaintiffs that it would continue to process its review of the approximately 350,000 pages of records responsive to the FOIA request. *See* Exhibits C (filed herewith).

**28.** The FOIA requires an agency to establish a system by which a requester may be informed of "an

estimated date on which the agency will complete action on the request." 5 U.S.C. § 552(a)(7)(B)

(2011).

**29.** Plaintiffs have attempted, via a number of communications with EPA, to discern when the

Agency intends to make a final determination on the continuing withholding of approximately 350,000

pages of information responsive to their FOIA request.

**30.** EPA has not provided "an estimated date on which the agency will complete action on the re-

quest," as required by FOIA. 5 U.S.C. § 552(a)(7)(B).

**31.** The EPA has failed to release additional records responsive to Plaintiffs' FOIA request.

**32.** None of FOIA's exemptions to mandatory disclosure apply to the information currently being

withheld by the EPA that is responsive to Plaintiffs' FOIA request.

**33.** As of the date this action was filed, the deadline for the EPA to issue a final determination on

Plaintiffs' FOIA request has passed.

**34.** As of the date this action was filed, the EPA had not issued a final determination on Plaintiffs'

FOIA request.

**35.** Plaintiffs have fully exhausted all administrative remedies required by FOIA. 5 U.S.C. §§

552(a)(6)(A), (a)(6)(C) (2011).

**36.** Plaintiffs have been required to expend costs and to obtain the services of a law firm, consisting

COMPLAINT

8

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439

1 | of attorneys, law clerks, and legal assistants, to prosecute this action.

**37.**    Plaintiffs have no adequate remedy at law and Defendant has no likelihood of success on the merits. Defendant cannot demonstrate that all 350,000 pages are subject to any exemption from FOIA and thus, should release the documents immediately.

**38.**    Moreover, Plaintiffs will be irreparably harmed should these documents not be made public. On information and belief, these documents demonstrate Luminant's knowing violation of the Clean Air Act. As such, release of these documents is wholly within the public interest and any balance of equities demonstrates that Plaintiffs should be awarded relief.

**CAUSES OF ACTION**
**COUNT I**

**VIOLATION OF THE FREEDOM OF INFORMATION ACT-**
**CONSTRUCTIVE DENIAL/ UNLAWFUL WITHHOLDING**

**39.**    The allegations made in all preceding paragraphs are realleged and incorporated by this reference.

**40.**    In response to their FOIA request and appeal, the EPA has provided some information to Plaintiffs, but it has withheld other information, invoking FOIA's Exemption 4. U.S.C. §§ 552(b)(4) (2011).

**41.**    The provisions of FOIA's Exemption 4 do not apply to all of the information being withheld from Plaintiff in this case and thus FOIA's Exemption 4 is inapplicable to bar the information's release.

**42.**    Plaintiffs have a statutory right to the records they seek, and there is no legal basis for Defendant

to assert that any of FOIA's nine disclosure exemptions apply. *See* 5 U.S.C. § 552(b)(l)-(9) (2011).

**43.**    Plaintiffs have a statutory right to have EPA process their FOIA request and appeal in a manner which complies with FOIA.

**44.**    Defendant has violated Plaintiff's rights under FOIA by unlawfully withholding information responsive to Plaintiff's FOIA request.

**45.**    Defendant has violated Plaintiffs' rights under FOIA by not providing a final determination on Plaintiff's FOIA request within the time mandated by the Act.

**46.**    Based on the nature of Plaintiffs' professional activities, they will undoubtedly continue to employ FOIA's provisions in information requests to Defendant in the foreseeable future.

**47.**    Plaintiffs' professional activities will be adversely affected if Defendant is allowed to continue violating FOIA's response deadlines as it has in this case.

**48.**    Unless enjoined and made subject to a declaration of Plaintiffs' legal rights by this Court, Defendant will continue to violate the rights of Plaintiffs to receive public records under the FOIA.

**49.**    Plaintiffs are entitled to reasonable costs of litigation, including attorneys' fees and costs pursuant to FOIA. 5 U.S.C. § 552(a)(4)(E) (2011).

**COUNT II**
**VIOLATION OF THE FREEDOM OF INFORMATION ACT:**
**DECISION DEADLINE VIOLATION**

**50.**    The allegations made in all preceding paragraphs are realleged and incorporated by this refer-

ence.

**51.**    Plaintiffs have a statutory right to have Defendant process their FOIA request and appeal in a

manner which complies with FOIA. Plaintiffs' rights in this regard were violated when the Defendant

unlawfully delayed its final determination of their information request and appeal beyond the determina-

tion deadlines imposed by the FOIA. 5 U.S.C. §§ 552(a)(6)(A)(i), (ii), (B) (2011).

**52.**    Defendant is unlawfully withholding public disclosure of information sought by Plaintiffs, in-

formation to which they are entitled and for which no valid disclosure exemption applies.

**53.**    Based on the nature of Plaintiffs' organizational activities, they will undoubtedly continue to

employ FOIA's provisions in information requests to Defendant in the foreseeable future.

**54.**    Plaintiffs' organizational activities will be adversely affected if Defendant is allowed to continue

violating FOIA's response deadlines as it has in this case.

**55.**    Unless enjoined and made subject to a declaration of Plaintiffs' legal rights by this Court, Defen-

dant will continue to violate the rights of Plaintiffs to receive public records under the FOIA.

**56.**    Plaintiffs are entitled to reasonable costs of litigation, including attorney fees pursuant to FOIA.

5 U.S.C. § 552(a)(4)(E) (2011).

COMPLAINT                                    11                          BAHR LAW OFFICES, P.C.
                                                                        1035 ½ Monroe Street
                                                                        Eugene, OR  97402
                                                                        (541) 556-6439

## COUNT II
## VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT

**57.**     The allegations made in all preceding paragraphs are realleged and incorporated by this refer-

ence.

**58.**     Defendant has failed to act in an official capacity under color of legal authority by failing to

comply with the mandates of FOIA consequent to its failure and refusal to issue a timely final determi-

nation on Plaintiffs' information request and appeal.

**59.**     Defendant has unlawfully withheld agency action by failing to comply with the mandates of

FOIA consequent to its failure and refusal to: (1) provide to Plaintiffs documents responsive to their in-

formation request and appeal that are not within the scope of any of FOIA's disclosure exemptions, and;

(2) issue a timely final determination on Plaintiffs' administrative request and appeal.

**60.**     Plaintiffs have been adversely affected and aggrieved by the Defendant's failure to comply with

the mandates of FOIA. Defendant's failure and refusal to: (1) provide to Plaintiffs documents responsive

to their information request and appeal that are not within the scope of any of FOIA's disclosure exemp-

tions, and; (2) issue a timely final determination on Plaintiffs' administrative request and appeal, has in-

jured Plaintiffs' interests in public oversight of governmental operations and constitute a violation of

Defendant's statutory duties under the APA.

**61.**     Plaintiffs have suffered a legal wrong as a result of the Defendant's failure to comply with the

mandates of FOIA. Defendant's failure and refusal to: (1) provide to Plaintiffs documents responsive to

their information request and appeal that are not within the scope of any of FOIA's disclosure exemp-

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439

tions, and; (2) issue a timely final determination on Plaintiffs' administrative request and appeal, has injured Plaintiffs' interests in public oversight of governmental operations and constitute a violation of Defendant's statutory duties under the APA.

**62.** Defendant's failure and refusal to: (1) provide to Plaintiffs documents responsive to their information request and appeal that are not within the scope of any of FOIA's disclosure exemptions, and; (2) issue a timely final determination on Plaintiffs' administrative request and appeal, has injured Plaintiffs' interests in public oversight of governmental operations and constitute a violation of Defendant's statutory duties under the APA, constitutes agency action unlawfully withheld and unreasonably delayed and is therefore actionable pursuant to the APA, 5 U.S.C. § 706(1) (2011).

**63.** Alternatively, Defendant's failure and refusal to: (1) provide to Plaintiffs documents responsive to their information request and appeal that are not within the scope of any of FOIA's disclosure exemptions, and; (2) issue a timely final determination on Plaintiffs' administrative request and appeal, has injured Plaintiffs' interests in public oversight of governmental operations and constitute a violation of Defendant's statutory duties under the APA, is in violation of FOIA's statutory mandates and is therefore arbitrary, capricious, or an abuse of discretion and not in accordance with law and is therefore actionable pursuant to the APA, 5 U.S.C. § 706(2) (2011).

**64.** Plaintiffs are entitled to judicial review under the Administrative Procedure Act 5 U.S.C. §§ 702, 706 (2011).

**65.** Plaintiffs are entitled to costs of disbursements and costs of litigation, including reasonable attorney and expert witness fees, under the Equal Access to Justice Act, 28 U.S.C.S. § 2412 (2011).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

**1.**      Order Defendant to promptly provide Plaintiffs all of the information sought in this action and to immediately disclose the requested documents.

**2.**      Declare Defendant's failure to disclose the documents requested by Plaintiffs to be unlawful under the FOIA, 5 U.S.C. § 552(a)(4)(A)(iii) (2011), as well as agency action unlawfully withheld and unreasonably delayed, 5 U.S.C. § 706(1) (2011), and/or arbitrary, capricious, an abuse of discretion, and not in accordance with law, 5 U.S.C. § 706(2) (2011).

**3.**      Declare Defendant's failure to timely make a determination on Plaintiffs' information request and appeal to be unlawful under the FOIA, 5 U.S.C. § 552(a)(6)(A)(i) (2011), as well as agency action unlawfully withheld and unreasonably delayed, 5 U.S.C. § 706(1) (2011), and/or arbitrary, capricious, an abuse of discretion, and not in accordance with law, 5 U.S.C. § 706(2) (2011).

**4.**      Award Plaintiffs their costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E) (2011) and 28 U.S.C. § 2412 (2011).

**5.**      Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted for the Court's consideration, this 23rd day of February, 2011.


s/ David Bahr _____            s/ Kristin Henry _____
David Bahr (Oregon Bar No. 901990)            Kristin Henry (California Bar. No. 220908)
Bahr Law Offices, P.C.                        Sierra Club Environmental Law Program
1035 ½ Monroe Street                          85 Second St., 2nd Floor
Eugene, OR  97402                             San Francisco, CA 94105
(541) 556-6439                                (415) 977-5727
(541) 685-1336 (facsimile)                    (415) 977-5793 (facsimile)
davebahr@mindspring.com                       Kristin.Henry@Sierraclub.org
(Application for admission *pro hac vice* pending)

EXHIBIT 3

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————

**No. 12-1248**                                    **September Term, 2012**

**EPA-77FR22392**

**Filed On:** December 13, 2012

Las Brisas Energy Center, LLC,

        Petitioner

    v.

Environmental Protection Agency and Lisa
Perez Jackson,

        Respondents

------------------------------

Conservation Law Foundation, et al.,
          Intervenors
------------------------------

Consolidated with 12-1251, 12-1252, 12-1253,
12-1254, 12-1257


**BEFORE**:     Rogers, Garland, and Brown, Circuit Judges

## O R D E R

Upon consideration of the motions to dismiss, the oppositions thereto, and the replies; and the motion for declaratory relief, the oppositions thereto, and the replies, it is

**ORDERED** that the motions to dismiss be granted. The challenged proposed rule is not final agency action subject to judicial review. See 42 U.S.C. § 7607(b)(1); Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (holding that final agency action "must mark the consummation of the agency's decisionmaking process" and "must be one by which rights or obligations have been determined, or from which legal consequences will flow") (internal quotations omitted). It is

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 12-1248**                                    **September Term, 2012**

**FURTHER ORDERED** that the motion for declaratory relief be dismissed as moot.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published.  The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc.  See Fed. R. App. P. 41(b); D.C. Cir. Rule 41.

**Per Curiam**

EXHIBIT 4

**IN THE UNITED STATES COURT OF APPEALS FOR THE
FIFTH CIRCUIT**

LUMINANT GENERATION
COMPANY LLC AND ENERGY
FUTURE HOLDINGS CORP.,

        Petitioners,

v.

UNITED STATES
ENVIRONMENTAL PROTECTION
AGENCY and LISA JACKSON,
Administrator, United States
Environmental Protection Agency,

        Respondent.

No. 12-60694

**DECLARATION OF DR. NEIL CARMAN IN SUPPORT OF
SIERRA CLUB AND ENVIRONMENTAL INTEGRITY PROJECT'S
MOTION TO INTERVENE**

I, Dr. Neil Carman, declare as follows:

1.      I am the Clean Air Director for the Sierra Club's Lone Star Chapter, a position I have held for over 20 years.  The following information is within my personal knowledge.

2.      The Sierra Club is a national, nonprofit environmental organization founded in 1892. The Club's purposes are to explore, enjoy, and protect the wild places of the Earth; to practice and promote the responsible use of the Earth's ecosystems and resources; to educate and enlist humanity in the protection and

1

restoration of the quality of the natural and human environment; and to use all lawful means to carry out these objectives.

3.     Sierra Club staff members working in Texas regularly reach out to and engage in discussion with our Texas membership about their concerns and priorities relating to air quality.  Over 21,000 Texans are currently members of the Sierra Club.

4.     As the Clean Air Director for the Lone Star Chapter, my general duties are to review emissions and technical data on industrial sources of air pollution and evaluate their impacts on Texas communities; provide technical comments on implementation of Clean Air Act in Texas; and conduct educational outreach to Sierra Club members on local air quality.  For the past 20 years, I have been engaged in evaluating how Luminant coal-burning power plants affect air quality, including both the local effects of emissions from those plants and their contribution to air quality standard nonattainment in the Dallas area.

5.     Protecting air quality has long been one of the Sierra Club's conservation priorities.  In my two decades at the Sierra Club, the organization has developed campaigns to raise awareness of air quality deterioration, to strengthen state air quality laws through regulatory and legislative advocacy, and to ensure adequate enforcement of national and state air quality laws.

6.     Sierra Club has more recently focused intensively on the air quality impacts of coal-burning power plants, particularly from grandfathered units that lack modern pollution controls, such as those operated by Luminant.  The organization

2

has dedicated considerable staff time and financial resources to identifying and investigating Clean Air Act violations at the Luminant plants. Sierra Club has two pending citizen enforcement actions against Luminant for violating applicable limits on opacity (a surrogate for soot emissions) at two plants.

7.    Sierra Club also has a strong interest in government and corporate transparency and has frequently filed requests for information under state and federal open records laws. Sierra Club uses the information gained by such requests in its own campaigns and in educating its members and the public. Sierra Club has at times disagreed with a government agency's determination to withhold records and, in fact, is currently in litigation against the United States Environmental Protection Agency over records pertaining to the Luminant facilities' violations of the Clean Air Act.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on January 24, 2013

_Neil J. Carman_

_____

Dr. Neil Carman

EXHIBIT 5

# DECLARATION OF BARBARA LAWRENCE

1.  My name is Barbara Lawrence and I am competent to give this declaration. I am over 21 years of age and reside in Streetman, Texas, on the Richland Chambers Reservoir.

2.  I am a member of the Sierra Club and have been a member since 2006.

3.  My husband and I moved to our home at 286 Lincoln Drive, Streetman, Texas, 75859 seven years ago. Our home is located approximately 10 miles northwest, as the crow flies, from the Big Brown Steam Electric Station ("Big Brown plant"). The predominant winds in our area are southerly, and thus we live directly in the path of air pollution from the Big Brown plant.

4.  We moved to our current home for retirement, because we wanted to live in a rural area with clean air and to enjoy an outdoor lifestyle. We were not aware of the air pollution problems due to the Big Brown plant when we moved to the Richland Chambers area.

5.  I am concerned that the air pollution from the Big Brown plant impacts the heath of everyone in our community, including myself and my husband. About half of our community are retirees and in the age group most susceptible to the health effects of particulate matter, including heart disease, asthma, and other respiratory ailments. Since moving to the Richland Chambers area, my husband has developed respiratory problems that require him to sleep with an oxygen machine. The incidences of cancer, autism, and childhood asthma are all very high in this area. I am also concerned about my grandchildren breathing clean air when they come visit us.

6.  I drive back and forth to Fairfield, Texas approximately three to four times a week to run errands. On this drive, I pass the Big Brown power plant. I frequently observe smoke and soot coming out of the stacks of Big Brown, and I am concerned about the hazards of particulate matter, sulfur dioxide, nitrogen oxides, and other pollutants for my health and my husband's health. I am aware that these pollutants are known to be harmful to human health.

7.  I have smelled a rotten-egg type smell coming from the Big Brown power plant while driving to and from Fairfield, as well as in my own backyard and when I am out walking the dog in my neighborhood. I am aware that this can be an indication of sulfur dioxide pollution, and am concerned about the pollution's impacts on my and my husband's health.

8.  The main attraction of moving to the area was the proximity to the Richland Chambers Reservoir, the third largest lake in Texas, a retirement and recreational community and a lake known throughout the state for the quality of its fishing. My family and I frequently fish in Richland Chambers Reservoir and eat our catch. I am concerned about the mercury in the fish, and the health impacts of consuming the fish. I am also concerned that if the Big Brown power plant does not reduce its pollution, the lake will soon become a "No Fishing" lake due to high mercury levels in the fish. The Big Brown power plant is the number one mercury polluter in the entire country. *See* Dirty Killowatts: America's Top Power Plant Mercury Polluters, Environmental Integrity Project (Nov. 2011)

(excerpt)(Attachment A).  I am aware that the mercury pollution leaves the power plant as particulate pollution through the smokestacks, which settles into nearby water bodies, including the Richland Chambers Reservoir.

9.     I want the air from the Big Brown plant's smokestacks to be as clear and clean as possible.  I want Big Brown to install modern pollution control equipment to reduce the pollution coming out of the smokestacks.

10.    I support of strong enforcement of the federal Clean Air Act and believe the owners of the Big Brown plant should be held accountable for any violations of the law.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: _Oct. 10, 2012_                    _Barbara Lawrence_
                                          Barbara Lawrence

EXHIBIT 6

### DECLARATION OF WILTON ADAMS

1   My name is Wilton E. Adams and I am competent to give this declaration. I am 53 years old and reside in Henderson, Texas.

2.   I am a member of the Sierra Club and have been a member since 2007.

3.   I own and run a business at 13978 State Highway 43 E, Tatum, Texas 75691-3461, approximately half of a mile from Luminant's Martin Lake power plant. I have worked at my business six days a week for the last 30 years. I own 35 acres of land and my business takes up five of those acres. My family uses the other 30 acres recreationally.

4.   I have a son and a daughter. My son is 13 years old and has sinus problems. My daughter is 16 years old. My children go four-wheel riding on our property near the Martin Lake power plant.

5.   I have had breathing problems for several years. Since 1996, I have also lost my sense of smell. I am concerned that the Martin Lake power plant has had a negative impact on my health.

6.   Frequently at night, I have observed bluish/grayish colored smoke coming from the Martin Lake power plant. Sometimes I see a rusty colored smoke accompanied by a loud noise.

7.   A gray film constantly covers the cars, houses, and patio furniture in the area surrounding the Martin Lake power plant, including my property. The gray film is evident for miles around the plant.

8.   I want the air from the power plant's smoke stacks to be as clear and clean as possible.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 10-4-12

Wilton E. Adams
Wilton E. Adams