No. 12-60694

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

### LUMINANT GENERATION CO. LLC, ET AL.,

**Petitioners,**

v.

### UNITED STATES ENVIRONMENTAL
### PROTECTION AGENCY, ET AL.,

**Respondents.**

---

## LUMINANT PETITIONERS' OPPOSITION
## TO SIERRA CLUB'S MOTION TO INTERVENE

---

**February 14, 2013**

No. 12-60694
_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT
_____

### LUMINANT GENERATION CO. LLC, ET AL.,

**Petitioners,**

**v.**

### UNITED STATES ENVIRONMENTAL
### PROTECTION AGENCY, ET AL.,

**Respondents.**

## LUMINANT PETITIONERS' OPPOSITION
## TO SIERRA CLUB'S MOTION TO INTERVENE

Petitioners Luminant Generation Company LLC and Energy Future Holdings Corp. (collectively "Luminant Petitioners") oppose the Sierra Club's motion to intervene in this proceeding. Sierra Club has no role under the Clean Air Act's statutory scheme related to Notices and Findings of Violation ("NOV"s) and no direct interest in this Court's review of the June 2012 NOV issued to Luminant Petitioners at issue in this proceeding. Nor has it overcome the presumption that the U.S. Environmental Protection Agency ("EPA") will adequately defend its NOV. Indeed, in briefing to this Court, EPA has already advanced the very same arguments about "final agency action" that Sierra Club sets out in its motion to

intervene. Sierra Club points to no gap between its position and EPA's position on the reviewability or validity of EPA's NOV.

Instead, Sierra Club's motion reveals that it would use intervention here to further its own litigation interests in a separate, ongoing Freedom of Information Act ("FOIA") case it filed against EPA in the U.S. District Court for the Northern District of California in which it is seeking to obtain confidential Luminant documents. Sierra Club will have the opportunity in the California FOIA case to obtain any such relief to which it persuades that federal court it is entitled. Its attempt to interject issues from that case into this one would provide Sierra Club a wholly unwarranted "second bite at the apple" and impede the efficient resolution of the petition for review to be decided by this Court.

Sierra Club's motion to intervene should therefore be denied. Sierra Club can contribute to this Court's consideration of the issues presented, if the Court concludes it would find Sierra Club's involvement helpful, by requesting to file a brief *amicus curiae* at the appropriate time.

## BACKGROUND

Petitioner Luminant Generation Company LLC ("Luminant") is a competitive power generation business in Texas that operates power plants and sells electricity. Luminant operates the Big Brown Power Plant in Freestone County, Texas, and the Martin Lake Power Plant in Rusk and Panola Counties,

Texas.[1]  With these plants and others, Luminant has over 15,000 megawatts of generation, used to supply electricity to approximately three million Texans through the Electric Reliability Council of Texas.

On July 13, 2012, EPA issued to Luminant Petitioners a Notice and Finding of Violation ("NOV") pursuant to the federal enforcement provisions of the Clean Air Act, 42 U.S.C. § 7413(a)(1).  Pet. For Review, Doc. 00511982816, Att. A.[2] The NOV "finds that Luminant is violating the Clean Air Act" and specifically its Prevention of Significant Deterioration ("PSD") provisions at Big Brown and Martin Lake Power Plants.  *Id*. at 1.

On September 11, 2012, pursuant to 42 U.S.C. § 7607(b)(1), Luminant Petitioners filed a petition for review of the NOV with this Court seeking its vacatur.  On October 12, 2012, EPA moved to dismiss the petition for lack of subject matter jurisdiction, arguing that the NOV was not "final agency action." Luminant Petitioners filed a brief in opposition, to which EPA replied on December 7, 2012.  On December 19, 2012, the Court entered an order carrying with the case EPA's motion to dismiss and set February 4, 2013, as EPA's deadline to file the administrative record.  On January 24, 2013, EPA filed an unopposed motion to extend the time to file the certified index to the

---

[1] Petitioner Energy Future Holdings Corp., although named in the NOV, neither owns nor operates the plants.

[2] A copy of the NOV is attached to the Petition for Review.

administrative record until May 1, 2013, and on January 31, 2013, the Court granted EPA's motion in part and ordered that the certified index is due no later than April 1, 2013.

On January 30, 2013—almost four months after the petition for review was filed and nearly two months after briefing on the jurisdictional issue was completed—Sierra Club filed its motion to intervene.

## ARGUMENT

In this Court, intervention in a petition for review of agency action requires that the movant demonstrate it 1) has a "defined role in the statutory scheme at issue" and 2) meets the standards for intervention embodied in Federal Rule of Civil Procedure 24(a)(2), including that it has a direct, substantial, and protectable interest that the federal government will not adequately represent. *Texas v. U.S. Dep't of Energy*, 754 F.2d 550, 551–52 (5th Cir. 1985). Sierra Club's proposed intervention does not meet either of these independent requirements.[3]

## I.    Sierra Club Has No Defined Role in the Clean Air Act with Respect to NOVs

Sierra Club has no role in EPA's NOV process and no statutory rights related to NOVs. Sierra Club claims to meet the first requirement for intervention—that it has a defined role in the statutory scheme at issue—because

---

[3] Sierra Club does not seek permissive intervention under Federal Rule of Civil Procedure 24(b).

"this proceeding concerns the enforcement of Clean Air Act violations," and it has generally "been litigating the evidentiary and legal bases of alleged Clean Air Act violations since the Act's inception."  Mot. to Intervene at 6.  But as support for this general "interest," it cites only the citizen suit provision of the statute (42 U.S.C. § 7604), not the federal enforcement provision that governs the NOV here (42 U.S.C. § 7413).  *Id.*  There is a gaping disconnect between Sierra Club's proper role under the statute as a citizen enforcer and its alleged interest in this proceeding.

Importantly, the Clean Air Act statutory scheme provides *no* role for Sierra Club or any other private third party with respect to NOVs.  The NOV here, as all NOVs, was issued pursuant to the federal enforcement provisions of the statute, 42 U.S.C. § 7413, *not* the citizen suit provision that Sierra Club invokes.  Under the federal enforcement scheme, NOVs are issued unilaterally by EPA at the time and with a scope of EPA's choosing.  42 U.S.C. § 7413(a)(1).  An NOV is directed at specific persons or entities (in this case, Luminant Petitioners) and is not applicable to anyone other than the recipient.  *Id.*  EPA is not required to confer with Sierra Club (or any party) prior to issuing an NOV.  *Id.*  There is no public notice and comment on an NOV, and EPA is required to provide copies only to the recipient and the State regulatory agency.  *Id.* § 7413(a)(1), (4).

The statutory provisions relied on by Sierra Club—the ones that *do* define the enforcement role of citizen groups like Sierra Club—have nothing to do with NOVs. Under the statutory scheme governing citizen enforcement, groups like Sierra Club can file suit against persons alleged to be in violation of an emission standard or limitation, irrespective of the presence or absence of any NOV. 42 U.S.C. § 7604(a)(1). Such a suit need only be preceded by 60-days advance notice from *the citizen group* of its intent to sue. *Id*. § 7604(b).

Moreover, issuance of an NOV by EPA in and of itself does not curtail Sierra Club's right to file suit. Only if EPA "has commenced and is diligently prosecuting *a civil action in a court* of the United States" is the citizen's right to sue on its own channeled into an opportunity to intervene in EPA's suit. *Id*. § 7604(b)(1)(B) (emphasis added). EPA has filed no such court action here; if and when EPA does, Sierra Club may request intervention in that district court lawsuit (and if EPA files no suit, Sierra Club may file its own).

Thus, while the limited role of citizen groups under the Clean Air Act's statutory scheme may be "important," "it does not give [Sierra Club] such a special interest in every action taken by the [EPA] pursuant to the [Clean Air Act] as to require their intervention." *Texas*, 754 F.2d at 552. Indeed, the citizen enforcement that Sierra Club relies on is a secondary means of enforcement that is intended to supplement—not to supplant—state and federal enforcement. *Sierra*

*Club v. Ga. Power Co.*, 443 F.3d 1346, 1349 (11th Cir. 2006). The NOV relates to EPA's primary enforcement, not Sierra Club's secondary role under the statute, and it does not enhance or diminish Sierra Club's rights under the statute.[4]

Further—although Sierra Club claims that it and other unnamed groups generally "have been litigating the evidentiary and legal bases of alleged Clean Air Act violations since the Act's inception," Mot. to Intervene at 6—Sierra Club has no present litigation interest related to the issues in this NOV that will be adversely affected. Sierra Club has not filed its own lawsuit under 42 U.S.C. § 7604 bringing PSD claims against Luminant Petitioners.[5] Any interest by Sierra Club is thus purely speculative.

Sierra Club proposes intervention here, not to further its defined role under the Clean Air Act, but to interject into this proceeding issues under a *different*

---

[4] Sierra Club badly misstates the holding of *Ceres Gulf v. Cooper*, 957 F.2d 1199 (5th Cir. 1992), in suggesting that mere "concern" for proper enforcement of a statute justified the granting of intervention in that case *to the federal government.* Mot. to Intervene at 11. To the contrary, the Court explained that the legally protected "interest" of the Director of the Office of Workers' Compensation Programs "springs from his role in *administering* the [Longshore and Harbor Workers' Compensation Act]" and held that intervention was warranted in order to enable the Director "to protect his jurisdiction"—conclusions that plainly have no application to the Sierra Club here. *Ceres Gulf*, 957 F.2d at 1204 (emphasis added).

[5] Sierra Club misleadingly states that it is "currently litigating two citizen suits against Luminant regarding Clean Air Act violations at the Big Brown and Martin Lake plants," Mot. to Intervene at 5 n.7, but it fails to explain that neither case involves the PSD provisions of the Clean Air Act. *See* Ex. 1 and 2.

statute—the Freedom of Information Act ("FOIA")—raised in a *different* case. Mot. to Intervene at 13–14. As it states in its motion to intervene, Sierra Club is litigating a FOIA case against EPA in California seeking access to confidential business information of Luminant Petitioners held by EPA related to the issuance of the NOV at issue here. Mot. to Intervene at 3 n.5. EPA is prohibited from releasing this confidential business information to Sierra Club pursuant to FOIA exemption 4, 5 U.S.C. § 552(b)(4), and the Trade Secrets Act, 18 U.S.C. § 1905. Yet, Sierra Club contends that its intervention here is needed to vet which of these confidential documents EPA should include in the administrative record for this case and whether they deserve confidential treatment under this Court's rules as part of this proceeding. *Id.* at 14. The two issues are not related, and Sierra Club should not be allowed to end-run FOIA's requirements and procedures by seeking access to confidential documents through intervention.[6]    Further, if Sierra Club

---

[6] Sierra Club's purported interest in intervening in this case is thus the *opposite* of that found to support intervention in *Ford v. City of Huntsville*, 242 F.3d 235 (5th Cir. 2001). There, the district court entered an order prohibiting the public disclosure of a settlement agreement between the plaintiff and defendant, thereby effectively precluding a newspaper from obtaining access to the agreement under the Texas Public Information Act ("TPIA"). *Id.* at 238. The Fifth Circuit found that the newspaper should have been allowed to intervene because the district court's decision "certainly . . . impede[d]" the newspaper's ability to exercise its rights under the TPIA. *Id.* at 240. Here, in stark contrast, Luminant Petitioners are not asking this Court to determine the outcome of the Sierra Club's FOIA suit. Rather, through its motion to intervene, it is the Sierra Club that is seeking to use this proceeding to obtain access to business documents that it otherwise cannot obtain under FOIA. Sierra Club does not need to intervene here

were granted intervention, the need to parse which documents in the record Sierra Club would have access to, and which it would not, would complicate the resolution of the dispute between the actual parties.

Moreover, through intervention and its anticipated challenge to EPA's compilation of the record, Sierra Club attempts to gain here the very relief it is seeking through its FOIA request and pending FOIA case in another federal court—release of Luminant Petitioners' confidential business information—which would be a clear abuse of intervention and a violation of the rule against intervenors interjecting new issues into a proceeding. *Vinson v. Wash. Gas Light Co.*, 321 U.S. 489, 498 (1944) ("[O]ne of the most usual procedural rules is that an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding."); *Lamprecht v. F.C.C.*, 958 F.2d 382, 389 (D.C. Cir. 1992) ("Except in extraordinary cases . . . intervenors 'may only join issue on a matter that has been brought before the court by another party.' They cannot expand the proceedings.") (internal citations omitted). There is no dispute between the actual parties before this Court over the confidential nature of the administrative record in this case. Sierra Club's attempt to add such a dispute to

---

to protect its interests under FOIA—it can and should do so through the direct litigation over its FOIA requests it has already filed in California, not collaterally in this Court.

the case does not, as it claims, justify its intervention, but instead weighs strongly *against* intervention.

## II.  Sierra Club Has Also Failed to Meet the Criteria for Intervention Under Federal Rule of Civil Procedure 24(a)(2)

The policies underlying Rule 24 independently require denial of Sierra Club's motion.  Intervention under Rule 24(a)(2) has four requirements: (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.  *Texas*, 754 F.2d at 552.  If a party seeking to intervene fails to meet any one of these requirements, its intervention is not permitted.  *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).  Sierra Club's motion fails to demonstrate a "direct, substantial, and legally protectable" interest in this case and to explain how EPA would be unable to represent Sierra Club's interests here.

### A.  Sierra Club has not demonstrated a "direct, substantial, and legally protectable" interest in the NOV or this proceeding

Intervention under Rule 24(a) requires that the applicant have an "interest" in the subject matter of the action.  This interest must be "direct, substantial, [and] legally protectable."  *Piambino v. Bailey*, 610 F.2d 1306, 1321 (5th Cir. 1980)

(citations omitted), *cert. denied*, 101 S. Ct. 568 (1980).  Sierra Club asserts that its general interest in "upholding the Clean Air Act's enforcement scheme" is a sufficient interest to support its intervention.  Mot. to Intervene at 7; *see also id.* at 10 ("Sierra Club has an organizational interest in strong enforcement of the Clean Air Act generally.").  But the Clean Air Act's "enforcement scheme" is not before the Court, and neither are the merits of any subsequent judicial enforcement action against Luminant Petitioners that EPA might bring.  Indeed, the enforcement action contemplated by Sierra Club may never happen.  The issuance of an NOV by EPA does not require any subsequent judicial enforcement action.  42 U.S.C. § 7412(a) (stating that EPA "may" initiate judicial enforcement 30 days following issuance of an NOV).  And EPA remains free to withdraw or amend its NOV at any time.  EPA could bring a judicial enforcement action but not pursue all of the violations found in the NOV.  Or, EPA could do nothing.  And, regardless of the outcome of this Court's review, Sierra Club would remain free to bring its own citizen suit enforcement action against Luminant Petitioners if EPA declined to bring a judicial action itself.  Sierra Club's interest in the outcome of this case based on any future enforcement is thus completely speculative.

Instead, the only "interest" relevant to an intervention request in this case would be an interest in the NOV itself, and Sierra Club has none.[7]   As explained above, under the statutory scheme, the Sierra Club has no statutory role in the issuance of an NOV or its contents.   Congress gave EPA primary enforcement authority and left it to the agency to determine the contents of an NOV and what claims and findings it would pursue in a civil action in federal court.   Indeed, if the Sierra Club were deemed to have an interest in an NOV sufficient to support intervention, it would follow that the Sierra Club could not only intervene to *defend* an NOV but would also have the right itself to *appeal* an NOV that the Sierra Club viewed as insufficiently protective of the environment (subject to resolution of any dispute about the NOV's finality).   But such a result would be absurd, because Sierra Club has no role to play in challenging EPA's basic enforcement discretion.

Nor does the fact that a decision in this case might theoretically impact some aspect of a future judicial enforcement action give Sierra Club a direct and legally protectable interest in the NOV, and Sierra Club's reliance on *Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994), to argue the contrary is misplaced.   *See* Mot. to

---

[7] Notably, the Sierra Club seeks to demonstrate a legally protectable interest only with respect to future enforcement litigation and makes no claim of a legally protectable interest on the grounds the NOV itself currently imposes legal consequences on Luminant that benefit Sierra Club's members.   Nor could it, as Sierra Club's stated position is that the NOV is a non-final, non-appealable order that has no legal consequences. Mot. to Intervene. at 3–4.

Intervene at 10. In *Espy*, a district court issued a preliminary injunction against the U.S. Forest Service from using "even-aged" logging sales, which resulted in the Forest Service canceling planned sales and any future sale of such timber notwithstanding existing sales contracts with timber companies. *Id.* at 1204, 1206. The Fifth Circuit found that trade associations representing timber purchasers should have been allowed to intervene because a determination that it is unlawful for the Forest Service to engage in even-aged logging would clearly impair the timber purchasers' contractual rights. *Id.* at 1207.

As this Court has since made clear in *Taylor Communications Group, Inc. v. Southwestern Bell Telephone Co.*, 172 F.3d 385, 388 (5th Cir. 1999), *Espy*'s narrow holding provides no support for the Sierra Club's position that the mere *potential* that a decision will have an adverse precedential effect is an "impairment" that can support intervention of right. In *Taylor,* this Court held that intervention was justified in *Espy* because the timber industry had "legally protectable property interests in existing timber contracts" and a final injunction by the district court against the Forest Service "was certain to affect the already-existing contracts." *Id.* But where a ruling by a court only "*might* . . . , but not necessarily" affect parties seeking to intervene, that level of "interest" is insufficient to support intervention under Rule 24(a). *Id.*

The Sierra Club does not remotely satisfy this standard. Sierra Club cannot—and does not—suggest that a contrary ruling would *necessarily* affect its ability to prosecute a suit of its own. Nor could it.[8] Indeed, Sierra Club's own explanation of its interest underscores the contingent nature of its interest in this appeal: "The facts and law underlying the notice challenged here *may* be the very same that would be at issue in either of these potential enforcement actions . . . . *If* Luminant's violations and potential defenses are litigated here, the district court *may* construe holdings in this case to affect the enforcement action in which Sierra Club *plans* to participate." Mot. to Intervene at 9 (emphases added). The interests claimed by Sierra Club on behalf of individual members fare no better: "Sierra Club's members . . . *may not* receive the benefits of EPA enforcement if Luminant is permitted to preemptively challenge EPA's notice." *Id*. at 10 (emphasis added). Again, Sierra Club can identify no interest of its members certain to be impacted by an adverse ruling in this case. Sierra Club's alleged interests are pure speculation.

Moreover, Sierra Club overstates the scope of the proceedings before this Court in its attempt to justify its intervention. The nature and scope of *pre-*

---

[8] The Sierra Club certainly has no legally protectable interest in whatever suit the government might bring. Even after issuing an NOV, the government has no obligation to file a federal court lawsuit or an obligation to pursue all of the violations found in the NOV. *See supra* p. 6. Thus, even to the extent that this appeal might have some impact on such a future suit by the government, the Sierra Club cannot intervene because of such an effect.

*enforcement* review under 42 U.S.C. § 7607(b), which Luminant Petitioners seek here, is necessarily different and more limited than the nature and scope of any judicial enforcement action that EPA may pursue under 42 U.S.C. § 7413(b) or Sierra Club may pursue under 42 U.S.C. § 7604(a). *See Sackett v. EPA*, 132 S. Ct. 1367, 1374–75 (2012) (Ginsburg, J., concurring) (noting the difference between challenging "EPA's authority" underlying the ACO and challenging its "terms and conditions").   Under 42 U.S.C. § 7607(b), issues that go to the legal validity of the NOV itself (in contrast to the substance of EPA's findings) may be reviewed by this Court.   *Cf. Sackett*, 132 S. Ct. at 1374 (noting that pre-enforcement review concerns the "validity" of EPA's action and "the question whether the regulated party is within the EPA's jurisdiction").   In contrast, whether any violation of the Clean Air Act as found in the NOV *actually occurred* is a question for the fact-finder in district court should EPA file a judicial enforcement action.   *Cf. Sierra Club v. Johnson*, 541 F.3d 1257, 1268 (11th Cir. 2008) (contrasting an NOV to a later "civil enforcement action" that involves "a determination of the merits of the substantive dispute").

In short, whatever interest Sierra Club or its members have in the NOV is too speculative to warrant intervention as-of-right in this proceeding.   Sierra Club's real interests lie with a hypothetical future district court action EPA has not yet brought and which EPA may never bring.   And the outcome of this case will in no

way limit or impede Sierra Club's own right to bring a citizen suit against Luminant Petitioners in the event EPA chooses not to do so.

### B.  Sierra Club has failed to overcome this Court's presumption that EPA will adequately represent its Sierra Club's Interests

Even if Sierra Club has some protectable interest in the validity of EPA's NOV at issue in this case, it has not shown that the federal government will not adequately defend the NOV and represent its interests.  *See Texas*, 754 F.2d at 553. Where the existing representative in the suit is the government, "there is a presumption of adequate representation which may be overcome by the intervenor only upon a showing of adversity of interest, the representative's collusion with the opposing party, or nonfeasance by the representative."  *Id*.  Sierra Club fails to make such a showing.

Indeed, Sierra Club makes *the same* argument as EPA concerning the reviewability of an NOV.  Both Sierra Club and EPA believe such actions are not final and thus unreviewable.  Mot. to Intervene at 3–4.  There is no daylight between their positions, and Sierra Club points to none.  Sierra Club suggests that the PSD allegations concerning the Big Brown and Martin Lake Power Plants found in EPA's NOV are a special priority of Sierra Club—above and beyond whatever interest EPA may have in pursuing these claims.  This is a *non-sequitor*. This appeal does not involve any EPA federal court action but instead the validity of EPA's NOV against Luminant Petitioners—an order in which Sierra Club plays

no statutory role.  Sierra Club does not and cannot claim it has greater incentive or ability to defend EPA's NOV than EPA itself.

Nor does Sierra Club's disagreement with EPA over the application of FOIA in federal court in California create an adversity of interest between Sierra Club and EPA.  Sierra Club's disagreement with EPA over the scope of FOIA is *not* an issue in this case, nor will it be.  And this Court should not allow Sierra Club to use this separate proceeding to collaterally attack EPA's position in separate litigation or to take a sneak peak at confidential documents barred from disclosure under FOIA.

### III.  Sierra Club's Views Can Be Presented By a Brief Amicus Curiae and Not By Intervention

In the event this Court finds Sierra Club might have something useful to contribute to this case, it should be allowed to do so through participation as an amicus curiae, not as an intervenor.  *See Taylor Comm'n Group, Inc.*, 172 F.3d at 389.  As explained by the Seventh Circuit and cited approvingly by this Court, where trade associations, labor unions, and citizens groups like Sierra Club may be affected by the rules of law established by appellate courts, their proper role is as an amicus curiae.  *Id*. (quoting *Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 532–33 (7th Cir. 1988)).  "To allow them to intervene as of right would turn the court into a forum for competing interest groups, submerging the ability of the original parties to settle their own dispute (or to have the court resolve it expeditiously)."

*Id*. "Participation as amicus curiae" is the strongly preferred alternative for such parties because it "will alert the court to the legal contentions of concerned bystanders, and because it leaves the parties free to run their own case . . . ." *Id*. The same approach is warranted here. Whatever abstract concern Sierra Club may have in a hypothetical future enforcement action is best shared with this Court through an amicus curiae submission while the true parties in interest litigate the merits.

## CONCLUSION

For the foregoing reasons, Sierra Club's motion to intervene should be denied.

Respectfully submitted,

/s/ P. Stephen Gidiere III
Counsel for Luminant Petitioners

**Counsel for Luminant Petitioners:**

Stephanie Z. Moore
General Counsel
Luminant Generation Company LLC
1601 Bryan Street, 22nd Floor
Dallas, Texas 75201

P. Stephen Gidiere III
C. Grady Moore, III
Thomas L. Casey, III
Balch & Bingham LLP
1901 Sixth Ave. N., Ste. 1500
Birmingham, Alabama 35203
205-251-8100
sgidiere@balch.com

Daniel J. Kelly
Associate General Counsel
Energy Future Holdings Corp.
1601 Bryan Street, 41st Floor
Dallas, Texas 75201

Peter D. Keisler
C. Frederick Beckner III
Sidley Austin LLP
1501 K Street, N.W.
Washington, D.C. 20005

## <u>LIST OF EXHIBIITS</u>

Exhibit 1    Original Complaint, *Sierra Club v. Energy Future Holdings Corporation and Luminant Generation Company, LLC*, No. 10-156 (E.D. Tex. Sept. 2, 2010)

Exhibit 2    Sierra Club's Original Complaint, *Sierra Club v. Energy Future Holdings Corporation and Luminant Generation Company, LLC*, No. 12-108 (W.D. Tex. May 1, 2012)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 14th day of February, 2013.


/s/ P. Stephen Gidiere III
Counsel for Luminant Petitioners

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

SEP - 2 2010

DAVID J. MALAND, CLERK
BY
DEPUTY

| | | |
|---|---|---|
| SIERRA CLUB, | ) | |
| Plaintiff, | ) | Civil Action No. 510 CV 156 |
| | ) | |
| vs. | ) | |
| | ) | COMPLAINT FOR CLEAN AIR |
| ENERGY FUTURE HOLDINGS CORPORATION | ) | ACT VIOLATIONS |
| and LUMINANT GENERATION COMPANY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

### ORIGINAL COMPLAINT

### I.     STATEMENT OF THE CASE

1.     The Sierra Club ("Plaintiff") brings this lawsuit on behalf of itself and the public to prevent Energy Future Holdings Corporation and Luminant Generation Company, LLC (collectively, the "Defendants") from violating the federal Clean Air Act ("CAA" or the "Act") and exposing the public to illegal amounts of harmful air pollution. In this lawsuit, Plaintiffs allege that Defendants have exceeded, and continue to exceed, federal emission limits, thereby violating the Act. Although this suit seeks to reduce air pollution, generally, from Defendants' facility, it is particularly concerned with exceedances of opacity and heat input limits on the plant's large coal-fired boilers. Opacity is an indicator of the excessive levels of particulate matter ("PM") pollution being emitted by the facility. Heat input is a constraint on capacity to burn coal.

2.     Particulate matter is a mixture of small particles, including organic materials, metals, and ash, which can cause health and environmental problems. According to the United States Environmental Protection Agency ("EPA"), once inhaled, PM can affect the lungs and pulmonary and respiratory systems, causing serious health effects such as "disease, cancer, and premature mortality." 52 Fed. Reg. 24,634, 24,663 (July 1, 1987). Numerous studies have linked PM exposure to increased respiratory symptoms, such as irritation of the airways,

coughing, or difficulty breathing; decreased lung function; aggravated asthma; development of chronic bronchitis; irregular heartbeat; heart attacks; and premature death in people with heart or lung disease. Additionally, PM can be carried long distances to settle over land or water, which may result in acidic lakes and streams, nutrient imbalances in aquatic systems, and damage to forests and farmlands.

3.     This suit is brought under the citizen enforcement provision, 42 U.S.C. § 7604, of the Act. Among other things, the suit seeks injunctive relief and the assessment of civil penalties for violations of permits and requirements under Title V (i.e., the federal operating permits program) of the Act, 42 U.S.C. §§ 7661-7661f, and the State Implementation Plan ("SIP") adopted by the State of Texas and approved by EPA pursuant to section 110 of the Act, 42 U.S.C. § 7410.

4.     Defendants have operated and continue to operate three electric generating units at the Martin Lake Power Plant (Martin Lake) in Rusk County, Texas in violation of the Act. Specifically:

A.     Defendants have violated and continue to violate opacity limits contained in the federally approved Texas SIP. These same limits are labeled "applicable requirements" in the facility's Title V Federal Operating Permit; and,

B.     Defendants have violated and continue to violate the heat input limit contained in Permit No. 933. Under the Texas SIP and the plain language of Defendants' permit, all representations made in any application for Permit No. 933 became a condition of that permit. Those same permit requirements are also conditions of the Martin Lake plant's Title V Federal Operating Permit because it expressly incorporated Permit No. 933.

## II.    JURISDICTION AND VENUE

5.     This court has subject matter jurisdiction under the Clean Air Act, 42 U.S.C. § 7604 (citizen suit provision), and the federal jurisdiction statute, 28 U.S.C. § 1331 (federal question jurisdiction). The relief requested is authorized pursuant to 42 U.S.C. section 7604 and 28 U.S.C. sections 2201- 2202.

6.     The violations complained of occurred and continue to occur in the Eastern District of Texas.  Venue is therefore proper the Eastern District of Texas, pursuant to the Clean Air Act, 42 U.S.C. § 7604(c)(1), and the federal venue statute, 28 U.S.C. § 1391(b)-(c).

7.     Consistent with the Clean Air Act's citizen suit provision, 42 U.S.C. § 7604 (b)(1)(A), on July 25, 2008, Plaintiff notified in writing the Administrator of the EPA (the "Administrator"), the Governor of Texas, the Texas Commission on Environmental Quality ("TCEQ"), Defendants Energy Future Holdings Corporation, Luminant Generation Company, LLC, and the plant manager of the Martin Lake Power Plant of the violations alleged in this complaint and of Plaintiff's intent to sue.  More than sixty days have passed since this notice ("Notice of Intent To Sue") was served via U.S. mail.  Defendants have violated and remain in violation of the Act, SIP and Title V permit.  Neither EPA nor TCEQ has commenced and diligently prosecuted a court action to redress these ongoing violations.

8.     A copy of this complaint, pursuant to the Clean Air Act's citizen suit provisions, 42 U.S.C. § 7604(c)(3), is being served simultaneously upon the Attorney General of the United States and the Administrator.

### III.    PARTIES

9.     Plaintiff Sierra Club was founded in 1872 by John Muir and is a nonprofit corporation organized under California law.  It is one of the oldest and largest grassroots environmental organizations in the country.  The Sierra Club has over 700,000 members, 23,000 of whom reside in Texas and belong to Sierra Club's Lone Star Chapter.  Among the goals of the Sierra Club are preserving and enhancing the natural environment and protecting public health.  The Sierra Club has the specific goal of improving outdoor air quality.

10.    Members of the Sierra Club use the resources of the East Texas airshed most immediately impacted by Defendants' violations of the Act.  Members reside, visit, work and recreate near Martin Lake and are exposed to the Martin Lake emissions at various times of the year.  The aesthetic, recreational, environmental, economic and health-related interests of Plaintiffs' members have been injured by Defendants' illegal and excessive emissions of pollutants from Martin Lake into eastern Texas air.  Interests of Plaintiffs' members that are

directly injured by Defendants' excessive and illegal discharges of pollutants from Martin Lake include, but are not limited to: (1) breathing air in eastern Texas free from Defendants' excessive pollution discharges, and without the negative health effects—and concern about those effects—that such discharges cause; (2) enjoying outdoor recreation that is unimpaired by pollution from Martin Lake's excessive emissions; (3) using and enjoying property, and viewing and enjoying natural scenery, wildlife and a sky that is unimpaired by pollution from Martin Lake's excessive emissions; (4) protecting the natural ecology of the region from air pollution-related impacts; and (5) enjoying the right to adherence by regulated entities to clean air laws in a region where members live and work.

11.    Defendant Energy Future Holdings Corporation, a corporation organized under the laws of Texas, through its subsidiary, Luminant Generation Company, a Texas Limited Liability Company ("LLC"), owns and operates the Martin Lake Power Plant.  Luminant Generation Company, LLC, also owns and operates the Martin Lake Power Plant.  Together, Defendants are Texas' largest power providers.

## IV.    STATUTORY BACKGROUND

**Clean Air Act citizen enforcement provision**

12.    The Clean Air Act is designed to protect and enhance the quality of the nation's air, so as to promote the public health and welfare and the productive capacity of its population. 42 U.S.C. § 7401(b)(1).

13.    Any person may commence a civil enforcement action under the Clean Air Act against any party "who is alleged to have violated . . . or to be in violation of [] an emission standard or limitation."  *Id.* § 7604(a). An "emission standard or limitation" is, among other things, any term or condition of a permit issued under an approved State Implementation Plan, any standard or limitation under any approved State Implementation Plan, or any permit term of a Title V operating permit.  *Id.* § 7604(f)(4).

**State Implementation Plans (SIPs)**

14.    The EPA has established National Ambient Air Quality Standards ("NAAQS") for a number of "criteria pollutants," such as particulate matter.  *Id.* § 7409; 40 C.F.R. pt. 50. An

4

area that meets the NAAQS for a particular criteria pollutant is deemed to be in "attainment" for that pollutant.   42 U.S.C. § 7407(d)(1).   An area that does not meet the NAAQS is a "nonattainment" area.  *Id.*

15.     Pursuant to 42 U.S.C. § 7410, each state must adopt and submit to EPA for approval a State Implementation Plan that provides for the attainment and maintenance of the NAAQS.   Specifically, SIPs set forth requirements for permitting programs and specific emission standards and limitations to assure that geographic areas either remain in attainment or regain attainment status.  Compliance with permit terms and conditions is a critical component of NAAQS attainment and maintenance.  Once a state's SIP is approved by EPA, it is published in the Code of Federal Regulations and becomes enforceable federal law.  42 U.S.C. § 7413; 40 C.F.R § 52.23.

16.     30 Tex. Admin. Code  § 111.111, related to the control of air pollution from visible emissions and particulate matter, provides that "[o]pacity shall not exceed 20 percent averaged over a six-minute period for any source on which construction was begun after January 31, 1972."   30 Tex. Admin. Code § 111.111.   This emission standard or limitation is a requirement in the Texas SIP. 40 C.F.R. § 52.2270(c); 61 Fed. Reg. 20,732 (May 8, 1996); 74 Fed. Reg. 19,144 (Apr. 28, 2009).  This emission standard or limitation is suspended for up to six consecutive minutes each hour if it is determined that the event that caused the opacity exceedance in that period was the cleaning of a firebox or the building of a new fire, soot blowing, equipment changes, ash removal, or rapping of precipitators.  30 Tex. Admin. Code § 111.111(a)(1)(E).

17.     Another, separate requirement of the Texas SIP provides that a preconstruction permit is a prerequisite to the construction of a new source of air contaminants, such as a power plant boiler.  *Id.* § 116.110; 68 Fed. Reg. 64,543 (Nov. 14, 2003); 40 C.F.R. §52.2270(c).

18.     The Texas SIP also requires facility owners to obtain permits that regulate emissions for new or modified sources of pollution.   *Id.*   The Texas SIP further states that "representations with regard to . . . operation procedures in an application for a permit" are conditions upon which a permit is issued and provides that "the permit holder shall not vary from

any representation or permit condition without obtaining a permit amendment if the change will cause: (A) a change in the method of control of emissions; (B) a change in the character of the emissions; or (C) an increase in the emission rate of any air contaminant." 30 Tex. Admin. Code § 116.116 (as approved by EPA at 68 Fed. Reg. 64,543 (Nov. 14, 2003)); 40 C.F.R.§ 52.2270(c).

**Title V Operating Permits**

19.     Title V of the Clean Air Act, 42 U.S.C. §§ 7661 -7661f, establishes an operating permit program for "major sources" of air emissions, such as the Martin Lake Plant.   The purpose of the Title V program is to ensure that all "federally-enforceable" requirements for a source's compliance with the Act are collected in one place—the Title V Federal Operating Permit.  Thus, for example, the SIP provisions applicable to a source are incorporated into the source's Title V permit.  EPA has stated that the Title V program "will enable the source, States, EPA, and the public to understand better the requirements to which the source is subject, and whether the source is meeting those requirements.  Increased source accountability and better enforcement should result."  57 Fed. Reg. 32,250, 32,251 (July 21, 1992).

20.     Texas implements the Title V program pursuant to EPA-approved regulations. 30 Tex. Admin. Code ch. 122; 40 C.F.R. § 52.2270(c).  This chapter and Section 502(a) of the Act, 42 U.S.C. § 7661c(a), make it unlawful for any person to violate any requirement of a permit issued under Title V or to operate a major source except in compliance with a permit issued by a permitting authority under Title V.

**Opacity**

21.     Opacity is defined in the Texas SIP as "the degree to which an emission of air contaminants obstructs the transmission of light expressed as the percentage of light obstructed as measured by an optical instrument or trained observer." 30 Tex. Admin. Code § 101.1(72) (Definitions regarding General Air Quality Rules) (as approved by EPA at 70 Fed. Reg. 16,129 (Mar. 30, 2005); 40 C.F.R. § 52.2270(c)).  For example, when the plume from the stack of a power plant obscures 20% of the light that would otherwise travel through that space, there is 20% opacity.

22.     Martin Lake Units 1, 2, and 3 are limited to 20% opacity under the Texas SIP, Control of Air Pollution from Visible Emissions and Particulate Matter, 30 Tex. Admin. Code § 111.111(a)(1)(B) (as approved by EPA at 61 Fed. Reg. 20,734 (May 8, 1996)), Defendants' Title V Federal Operating Permit pursuant to Section 502(a) of the Act, 42 U.S.C. § 7661(a), and Texas regulations governing the federal operating permits program, 30 Tex. Admin. Code § 122.143(4).[1]

23.     Many of the ongoing opacity violations, set forth in Section V, are associated with opacity above 90%. These levels are more than quadruple the limits contained in the Texas SIP and in the Title V Federal Operating Permit. At these high levels, light is nearly totally obscured by the plume of air contaminants.

24.     Opacity may also be used to help assure compliance with emission limits for particulate matter.     Specifically, under their Title V Federal Operating Permit's compliance assurance monitoring ("CAM") terms, Defendants must monitor opacity to assure that the electrostatic precipitators—the primary plant controls for PM—are operating properly and, thus, assure compliance with various particulate emission limits set by the SIP and Defendants' underlying air quality permit. According to the terms of the Title V permit and related CAM requirements, opacity violations are not mere technicalities. This is because opacity is an indicator for particulate matter pollution. In fact, according to the CAM provisions of the facility's Title V permit, opacity levels above 30% may indicate failure to meet the particulate matter limits contained in 30 Tex. Admin. Code section 111.153.

25.     PM is a mixture of small particles, including organic chemicals, metals and ash, that can cause health and environmental problems. EPA has stated "that health evidence from various disciplines provides a strong and coherent basis for concluding that both short-term and long-term exposure to fine particles is associated with health effects ranging from subtle changes in lung function to premature mortality." 71 Fed. Reg. 2620, 2636 (Jan. 17, 2006). Furthermore,

---

[1]     The law provides one narrow exception to opacity limits. In calculating the number of opacity violations at Martin Lake, Plaintiff conservatively excepted one opacity violation per hour, under the generous assumption that the reason for the excess emissions might fall under the exception. *See* 30 Tex. Admin. Code § 111.111(a)(1)(E); Pl.'s Compl. ¶¶ 36-42, *infra*.

the weight of scientific opinion is that there is no safe level at which particulate matter does not pose a threat to human health. *See, e.g.,* U.S. Envtl. Prot. Agency, *Air Quality Criteria for Particulate Matter*, Vol. II, pp. 8-346 (Oct. 2004).

26.    Defendants are subject to separate emission limits for particulate matter established under "New Source Performance Standards" at 40 C.F.R. section 60.42(a)(2), and under the federally enforceable SIP at 30 Tex. Admin. Code section 111.153 and 74 Fed. Reg. 19,144 (Apr. 28, 2009).

**Heat Input**

27.    A coal-fired boiler's heat input rate, or the number of British Thermal Units ("BTUs") it consumes hourly, is directly related to the rate of coal combustion by that boiler. As such, it is an indirect measure of the boiler's size or capacity and is correlated to the amount of pollution it can emit.    Heat input limits are one of the most important indirect capacity constraints on emissions of numerous pollutants, including, but not limited to, particulate matter, sulfur dioxide, mercury and carbon dioxide.    In short, higher heat input, if other operating parameters are constant, results in more pollution.    As already noted, under the Texas SIP, representations with regard to construction plans and operation procedures in an application for a permit are the conditions upon which that permit is issued.    30 Tex. Admin. Code § 116.116; (Control of Air Pollution by Permits for New Construction or Modification—Changes to Facilities); 68 Fed. Reg. 64,543 (Nov. 14, 2003).    As explained below, emission rates allowed under Permit No. 933 are based on Defendants' representations to TCEQ regarding heat input rates.

28.    Defendants submitted an application to the Texas Air Control Board (the predecessor to TCEQ) requesting a permit.    In that application, Defendants represented a heat input rate of 8,530 MMBTU/hr for the Martin Lake facility.    Based on Defendants' representation of a heat input rate of 8,530 MMBTU/hr, the Martin Lake facility was given a permit (Permit No. 933) with corresponding emission limits. For example, Permit No. 933 limited the facility's hourly allowable emission rate for particulate matter to 853 lbs/hr and its hourly allowable sulfur dioxide emission rate to 10,236 lbs/hr.    These hourly emission limits are

simply the products of the maximum hourly heat rate represented in Defendant's application (i.e. 8,530 MMBTU/hr) multiplied by separate regulatory limits—0.1 lbs/MMBTU (for PM10) and 1.2 lbs/MMBTU (for sulfur dioxide).    The results of these calculations remain the hourly emission limits reflected in Defendants' current air quality permit, most recently renewed in 2004, for Martin Lake. *See* Permit No. 933, Maximum Allowable Emission Rates (Sept. 3, 2004), at 1.

29.    EPA compiles and electronically publishes hourly data for heat input rates at regulated power generating facilities. This information is supplied to EPA by the facilities themselves.

**Martin Lake Power Plant**

30.    Defendants Energy Future Holdings Corporation and Luminant Generation Company, LLC, own and operate the Martin Lake Power Plant. Martin Lake is a three-unit, coal-fired power plant in Rusk County, Texas. The Martin Lake Power Plant consists of three distinct coal-fired boiler units (unit numbers 1-3). The three units at Martin Lake became operational in 1977, 1978, and 1979, respectively. The units have electrostatic precipitators and wet flue gas desulfurization units to control particulate matter and sulfur emissions. None of the units has instrumentation for the real-time monitoring of particulate emissions. Each unit has continuous opacity monitors.

31.    At all times relevant to this civil action, the Martin Lake Power Plant and each of its three units were a "major source" within the meaning of Title V of the Act and the Texas SIP.

32.    On September 3, 2004, TCEQ consolidated each of Defendants' preconstruction permits for Units 1, 2, and 3 into Permit No. 933, and renewed Permit No. 933 for a period of 10 years with new permit conditions and a Maximum Allowable Emission Rate Table ("MAERT").

33.    On November 3, 2005, TCEQ granted the most recent version of Defendants' Title V Federal Operating Permit – Permit No. O53. The provisions of Permit No. 933 are applicable requirements of the Title V Federal Operating Permit. Permit No. O53, § 9.

## V.    FIRST CLAIM FOR RELIEF

(SIP Violations at Martin Lake Plant's Unit Nos. 1, 2, 3 – Exceeding Opacity Limitations)

34.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-33.

35.    At various times since July 2006, Defendants have exceeded, and continue to exceed, the 20 percent opacity limit at Martin Lake Units 1, 2, and 3 in violation of the Texas SIP, 30 Tex. Admin. Code §§ 111.111(a)(1)(B); 61 Fed. Reg. 20734 (May 8, 1996); 40 C.F.R. § 52.2270(c); 74 Fed. Reg. 19,144 (Apr. 28, 2009).

36.    The table below summarizes the number of opacity violations per unit and per quarter at Martin Lake between July 2006 and April 2008 (inclusive).

### Summary of Number of Opacity Violations
### (per Unit per Quarter)

| Unit | Violations 3rd Q 2006 | Violations 4th Q 2006 | Violations 1st Q 2007 | Violations 2nd Q 2007 | Violations 3rd Q 2007 | Violations 4th Q 2007 | Violations 2008 | Total |
|------|------|------|------|------|------|------|------|------|
| 1 | 375 | 636 | 566 | 439 | 457 | 55 | 267 | 2795 |
| 2 | 589 | 1057 | 620 | 408 | 154 | 123 | 593 | 3544 |
| 3 | 260 | 660 | 1169 | 679 | 72 | 340 | 701 | 3881 |
| Total | 1224 | 2353 | 2355 | 1526 | 683 | 518 | 1561 | 10,220 |

Defendants have continued to violate the 20 percent opacity limit identified in paragraph 35 since April of 2008.

37.    Attachment B to the Notice of Intent to Sue provided Defendants notice of each separate opacity violation between July 2006 and April 2008 (inclusive) at Martin Lake, including the date and time of each violation.

38.    In calculating the number of opacity violations at Martin Lake, Plaintiff conservatively excepted one opacity violation per hour, under the conservative assumption that the reason for the excess emissions could fall under one of the allowable exceptions specified at 30 Tex. Admin. Code section 111.111(a)(1)(E).

39.    As provided at 42 U.S.C. section 7604(a), 40 C.F.R section 19.4 and 42 U.S.C. section 7413(d)(1) and the Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, the violations set forth above subject Defendants to injunctive

relief and civil penalties of up to $32,500 per day for each violation of the opacity standard identified in Paragraph 35 that has occurred since July 2, 2006.

## VI.    SECOND CLAIM FOR RELIEF

(Title V Federal Operating Permit and SIP Violations at Martin Lake Plant, Unit Nos. 1, 2, 3 – Exceeding Maximum Allowable Heat Input Rate)

40.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1- 39.

41.    Martin Lake routinely exceeds the 8,530 MMBTU/hr heat input limit for each of its three units, and operation above this limit constitutes a violation of Permit No. 933 (General Condition 1), Title V Federal Operating Permit No. O53, and 30 Tex. Admin. Code section 116.116, a requirement of the Texas SIP. 68 Fed. Reg. 64,543 (Nov. 14, 2003).

42.    Each of these alleged violations was identified in Attachment C to the Notice of Intent to Sue.

43.    At various times since July 2006, Defendants have exceeded and continue to exceed the 8,530 MMBTU/hr heat input limit at Martin Lake Units 1, 2, and 3 in violation of the Texas SIP, 30 Tex. Admin. Code § 111.111(a)(1)(B), Defendants' Title V Federal Operating Permit, Section 502(a) of the Act, 42 U.S.C. § 7661(a), and Texas regulations governing the federal operating permits program, 30 Tex. Admin. Code § 122.143(4).

## VII.    PRAYER FOR RELIEF

WHEREFORE, based upon the allegations set for above, Plaintiff respectfully requests that this Court:

A.    Declare that the Defendants have violated the Clean Air Act, have violated the relevant provisions of the Texas SIP, and have violated their Title V permit by failing to comply with the opacity limits and heat input limits mandated therein;

B.    Enjoin Defendants preliminarily and permanently from operating the Martin Lake Power Plant, except in accordance with a compliance schedule that will cause the plant to attain the standards of the State SIP, the plant's air quality permit and its Title V permit in a timely manner;

C.    Order Defendants to take other appropriate actions, including beneficial

mitigation projects authorized under the Clean Air Act, 42 U.S.C. § 7604(g)(2), to remedy, mitigate, and offset the harm to the public health and the environment caused by the violations of the Clean Air Act alleged above;

D.      Assess a civil penalty against Defendants of $32,500 per day, for each violation proven by Plaintiff; Award Plaintiff its costs and attorneys fees related to this action;

E.      Grant such other relief as the Court deems just and proper.

Respectfully submitted,

DATED:  September 2, 2010

By:     _____
        C. David Glass, *Lead Attorney*
        TX State Bar No. 24036642
        Robert W. Weber
        TX State Bar No. 21044800
        **SMITH WEBER, L.L.P.**
        5505 Plaza Drive
        Post Office Box 6167
        Texarkana, Texas 75503 / 75505
        Tel:  903-223-5656
        Fax:  903-223-5652
        Email: dglass@smithweber.com
        Email: bweber@smithweber.com

        **COUNSEL FOR PLAINTIFF**

OF COUNSEL:

Suma Peesapati (CA State Bar No. 203701)
EARTHJUSTICE
426 17 St., 5th Floor
Oakland, California 94612
Tel: (510) 550-6725
Fax: (510) 550-6749
Email: speesapati@earthjustice.org

Ilan Levin (TX State Bar No. 00798328)
ENVIRONMENTAL INTEGRITY PROJECT
1303 San Antonio Street, Ste. 200
Austin, TX  78701
(512) 637-9479
(512) 584-8019 (facsimile)
Email: ilevin@environmentalintegrity.org

℀JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

SIERRA CLUB

**(b)** County of Residence of First Listed Plaintiff   San Francisco, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

(see attachment)

## DEFENDANTS

ENERGY FUTURE HOLDINGS CORPORATION and LUMINANT GENERATION COMPANY, LLC

County of Residence of First Listed Defendant   Dallas, TX
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☒ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

5-1-1966

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Federal Clean Air Act (42 USC 7401 et seq.)
Brief description of cause:
violations of air pollution limits for opacity and heat input

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE   David Folsom   DOCKET NUMBER   Civil No. 5:05-cv-00039-DF

DATE
09/02/2010

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

# ATTACHMENT TO CIVIL COVER SHEET

## PLAINTIFF'S ATTORNEYS

C. David Glass, *Lead Attorney*
TX State Bar No. 24036642
Robert W. Weber
TX State Bar No. 21044800
**SMITH WEBER, L.L.P.**
5505 Plaza Drive
Post Office Box 6167
Texarkana, Texas 75503 / 75505
Tel: 903-223-5656
Fax: 903-223-5652
Email: bweber@smithweber.com
Email: dglass@smithweber.com

OF COUNSEL:

Suma Peesapati (CA State Bar No. 203701)
EARTHJUSTICE
426 17 St., 5th Floor
Oakland, California 94612
Tel: (510) 550-6725
Fax: (510) 550-6749
Email: speesapati@earthjustice.org

Ilan Levin (TX State Bar No. 00798328)
ENVIRONMENTAL INTEGRITY PROJECT
1303 San Antonio Street, Ste. 200
Austin, TX 78701
(512) 637-9479
(512) 584-8019 (facsimile)
Email: ilevin@environmentalintegrity.org

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| SIERRA CLUB, | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | Civil Action No. 6:12-cv-108 |
| ENERGY FUTURE HOLDINGS | § | |
| CORPORATION and LUMINANT | § | |
| GENERATION COMPANY, LLC, | § | |
| | § | |
| *Defendants.* | § | |

## SIERRA CLUB'S ORIGINAL COMPLAINT

## I.        INTRODUCTION

1.      Sierra Club ("Plaintiff") brings this lawsuit on behalf of itself and the public to prevent Energy Future Holdings Corporation and Luminant Generation Company, LLC (collectively, the "Defendants") from violating the federal Clean Air Act ("CAA" or the "Act") and exposing the public to excessive and unlawful amounts of harmful air pollution from the Big Brown Steam Electric Station ("Big Brown plant").  Plaintiff alleges that the Big Brown plant has exceeded, and continues to exceed, federally enforceable limits on the amount of air contaminants—specifically, particulate matter or soot—that the power plant is allowed to emit into the air.

2.      Particulate matter ("PM") is a mixture of small particles, including organic chemicals, metals, and ash, which can cause health and environmental problems.  Once inhaled, particulate matter can affect the heart and lungs and cause serious health effects.  Numerous

scientific studies have linked exposure to particulate matter to increased respiratory symptoms, such as decreased lung function, aggravated asthma, chronic bronchitis, in addition to heart attacks and premature death in people with heart or lung disease.  Furthermore, PM can be carried long distances to settle over land and water, which may result in pollution of lakes and streams, and damage to farmlands.  The U.S. Environmental Protection Agency ("EPA") has relied on PM emissions as a surrogate for mercury pollution, a highly toxic metal that can adversely affect a baby's growing brain and nervous system.  *See, e.g.*, National Emission Standards for Hazardous Air Pollutants from Coal- and Oil-fired Electric Utility Steam Generating Units and Standards of Performance for Fossil-Fuel-Fired Electric Utility, Industrial-Commercial-Institutional, and Small Industrial-Commercial-Institutional Steam Generating Units, 77 Fed. Reg. 9,303, 9,367 (Feb. 16, 2012) (for existing and new oil-fired electric generating units, establishing PM as a surrogate for toxic metals, including mercury and arsenic).

3.     Opacity is an indicator of the excessive levels of particulate matter pollution being emitted by a facility.  Essentially, opacity measures the level of soot in the facility's exhaust. Texas rules define opacity as "the degree to which an emission of air contaminants obstructs the transmission of light expressed as a percentage of light obstructed as measured by an optical instrument or trained observer."  30 TEX. ADMIN. CODE § 101.1(72).  The higher the opacity, the less light passes through a plume of air pollution.

4.     This suit seeks injunctive relief and the assessment of civil penalties pursuant to the citizen suit provision, 42 U.S.C. § 7604, of the Act.

## II.        JURISDICTION, VENUE, AND NOTICE

5.     This Court has subject matter jurisdiction under the Clean Air Act, 42 U.S.C. § 7604 (citizen suit provision), and the federal jurisdiction statute, 28 U.S.C. § 1331 (federal

question jurisdiction).  The relief requested is authorized pursuant to 42 U.S.C. § 7604 and 28 U.S.C. §§ 2201 & 2202.

6.     The violations complained of occurred and continue to occur at Defendants' Big Brown plant, a coal-fired power plant located in Freestone County, in the Western District of Texas.  Venue is therefore proper in this Court, pursuant to Clean Air Act, 42 U.S.C. § 7604(c)(1) and the federal venue statute, 28 U.S.C. § 1391(b) & (c).

7.     In compliance with 42 U.S.C. § 7604(b)(1)(A), on October 27, 2011, Plaintiff notified in writing the Defendants, the Administrator of the EPA, the Governor of Texas, and the Texas Commission on Environmental Quality ("TCEQ") of Plaintiff's intent to sue for the violations alleged in this complaint.  More than sixty days have passed since the notice letter was sent.  *See* Exhibit A (Notice of Intent to Sue).  Defendants have violated and remain in violation of the Act.  Neither EPA nor the TCEQ has commenced and is diligently prosecuting a court action to redress Defendants' ongoing violations.

8.     Pursuant to the Clean Air Act's citizen suit provision, a copy of this complaint is being served on the Attorney General of the United States and the EPA Administrator.

### III.     PARTIES

#### A.     Plaintiff

9.     Plaintiff Sierra Club, which was founded in 1892 by John Muir, is one of the oldest and largest grassroots environmental organizations in the country, with members in Texas and throughout the nation.  Sierra Club is dedicated to exploring, enjoying, and protecting natural resources and wild places.  Sierra Club promotes the responsible use of the earth's ecosystems and resources, and educates and works to restore the natural environment.  The Sierra Club has the specific goal of improving outdoor air quality.

3

10.    Members of the Sierra Club live, work, and recreate in areas nearby and downwind of Defendants' Big Brown plant and have been and continue to be exposed to emissions from the coal-fired power plant. The aesthetic, recreational, environmental, economic and health-related interests of Plaintiff's members have been injured by Defendants' unlawful and excessive emissions of pollutants from the Big Brown plant into the air.

11.    Plaintiff's members have suffered, and will continue to suffer, actual and threatened injury to their health and welfare due to Defendants' ongoing violations of the Clean Air Act described herein.    Interests of Plaintiff's members that are directly injured by Defendants' excessive and illegal discharges of pollutants from the Big Brown plant include, but are not limited to: (1) breathing air free from Defendants' excessive pollution emissions, and without the negative health effects—and concern about those effects—that such emissions cause; (2) enjoying outdoor recreation, including fishing in nearby lakes and streams, that is unimpaired by pollution from the Big Brown plant's excessive emissions; (3) using and enjoying property, and viewing and enjoying natural scenery and wildlife that is unimpaired by pollution from the Big Brown plant's excessive emissions; and (4) protecting the natural ecology of the region from air pollution-related impacts.

### B.    Defendants

12.    Defendant Energy Future Holdings Corporation, a corporation organized under the laws of Texas, through its subsidiary, Luminant Generation Company, a (Texas) Limited Liability Company ("LLC"), owns and operates the Big Brown plant.  Luminant Generation Company, LLC, also owns and operates the Big Brown plant.  Together, Defendants are Texas's largest electric power generators.

## IV.     BACKGROUND

### A.     The Big Brown Plant

13.     Defendants own and operate the Big Brown plant, a coal-fired electric generating plant, located in Freestone County, Texas.  The Big Brown plant consists of two main boilers, designated as Units 1 (600 Megawatts capacity) and 2 (595 Megawatts capacity), and associated facilities and material handling operations.  Units 1 and 2 began operation in 1971 and 1972, respectively.

14.     The Big Brown plant's main boilers emit into the air a slew of air contaminants, including particulate matter, sulfur dioxide, nitrogen dioxide, lead, carbon monoxide, mercury and arsenic, among others.  In 2010, the plant emitted 1,610 pounds of mercury, more than any other power plant in the United States.  *See* Dirty Kilowatts: America's Top Mercury Power Plant Polluters at 3 (Nov. 2011), http://www.environmentalintegrity.org/ 11_15_2011.php.

15.     The Big Brown plant does not continuously monitor particulate matter emissions, other than through opacity monitors.  Defendants rely on opacity to determine whether the power plant is complying with its particulate matter emission limit.  Based on the terms of the Big Brown plant's Title V Operating Permit No. O65 ("Title V Permit"), opacity over 20 percent indicates that pollution controls are not functioning properly and that particulate matter emission limits are being exceeded.  *See* Title V Permit (Exhibit B) at 39.

16.     At all times relevant to this civil action, the Big Brown plant has been a "major source" within the meaning of Title V of the Act and the Texas State Implementation Plan ("SIP").  *See* 42 U.S.C. § 7661(2) (referring to 42 U.S.C. § 7602(d), which defines a "major stationary source" as "any stationary facility or source of air pollutants, which directly emits, or has the potential to emit, one hundred tons per year or more of any air pollutant . . ."); *see* 30

5

TEX. ADMIN. CODE § 116.12(17) (74 Fed. Reg. 11,851 (Mar. 20, 2009) (incorporating the federal definitions into the Texas SIP)).

## B.     The Clean Air Act

17.     The Clean Air Act is designed to protect and enhance the quality of the nation's air, so as to promote the public health and welfare and the productive capacity of its population. 42 U.S.C. § 7401(b)(1).

### i.     State Implementation Plans

18.     Pursuant to Clean Air Act Section 110, 42 U.S.C. § 7410, each state must adopt and submit to EPA for approval a State Implementation Plan, the overall body of state air pollution regulations and other requirements through which a state implements the Clean Air Act's permitting requirements.  Once a state's SIP is approved by EPA, it is published in the Code of Federal Regulations and can be enforced by the state, EPA, or citizens.  42 U.S.C. §§ 7413 & 7604; 40 C.F.R § 52.23.

19.     The Texas SIP limits the amount of various pollutants, including opacity and particulate matter, that power plants such as the Big Brown plant may emit.  Under 30 TEX. ADMIN. CODE § 111.111(a)(1)(A), opacity from the Big Brown plant "shall not exceed 30 percent averaged over a six-minute period."[1]  EPA approved this standard as an applicable requirement of the Texas SIP.  40 C.F.R. § 52.2270(c); 61 Fed. Reg. 20,732, 20,734 (May 8, 1996) (approving the 30 percent opacity limit into the Texas SIP).

20.     Furthermore, under 30 TEX. ADMIN. CODE § 111.153(b), emissions from the Big Brown plant may not exceed "0.3 pound of total suspended particulate per million [British

---

[1] This emission standard or limitation is suspended for up to six consecutive minutes each hour if it is determined that the event that caused the opacity exceedance in that period was the cleaning of a firebox or the building of a new fire, soot blowing, equipment changes, ash removal, or rapping of precipitators.  30 TEX. ADMIN. CODE § 111.111(a)(1)(E).

6

thermal units ("Btu")] heat input, averaged over a two-hour period."  EPA approved this standard

as an applicable requirement of the Texas SIP.  74 Fed. Reg. 19,144 (Apr. 28, 2009) (approving

30 TEX. ADMIN. CODE § 111.153(b) into the Texas SIP).

### ii.    Title V Operating Permits

21.    Title V of the Clean Air Act, 42 U.S.C. §§ 7661-7661f, establishes an operating

permit program for "major sources" of air emissions, such as the Big Brown plant.  The purpose

of Title V is to ensure that all the air pollution authorizations for a given facility and all

"applicable requirements" for that facility are collected into a single federally-enforceable air

pollution permit.

22.    Texas implements the Title V program pursuant to EPA-approved regulations in

Texas Administrative Code, Chapter 122.[2]  Section 502(a) of the Clean Air Act, 42 U.S.C.

§ 7661a(a), and the Texas Title V Operating Permit program have at all times relevant to this

complaint made it unlawful for a permit holder to violate any requirement of his or her Operating

Permit issued pursuant to Title V of the Clean Air Act, or to operate a major source except in

compliance with a permit issued under Title V.  30 TEX. ADMIN. CODE § 122.143(4) ("any

noncompliance with either the terms or conditions codified in the [Title V permit] . . . constitutes

a violation of the [CAA]").

### iii.    Citizen Suits

23.    Any person may commence a civil enforcement action under the Act against any

party "who is alleged to have violated . . . or to be in violation of an emission standard or

limitation." Id. § 7604(a).  An "emission standard or limitation" is any term or condition of a

---

[2] EPA fully approved Texas's Title V Operating Permit program effective November 30, 2001.  66 Fed. Reg. 63,318
(Dec. 6, 2001).

permit issued under an approved State Implementation Plan, any standard or limitation under any approved State Implementation Plan, or any permit term of a Title V Operating Permit. *Id.* § 7604(f)(4).

## V.    CAUSES OF ACTION

**Cause of Action No. 1:**  Defendants violated and continue to violate the applicable opacity limit in the Texas SIP.  The opacity limit is also enforceable through the Big Brown plant's Title V permit.

24.    Plaintiff re-alleges and incorporates Paragraphs 1- 23.

25.    Under the Texas SIP, emissions from the Big Brown are subject to a 30 percent opacity limit (averaged over a six minute period).[3]  30 TEX. ADMIN. CODE § 111.111(a)(1)(A); 61 Fed. Reg. 20,732, 20,734 (May 8, 1996) (incorporating the 30 percent opacity limit into the Texas SIP).

26.    According to Defendants' self-reported data, the Big Brown plant violated the 30 percent opacity limit on 6,520 occasions between July 2007 and December 2010, in violation of the Texas SIP, the Defendants' Title V Permit,[4] and the Clean Air Act.  Unit 1 violated this limit

---

[3] The Big Brown plant is also subject to a 20 percent limit on opacity.  Although Plaintiff alleges that the plant has consistently violated its 20 percent opacity limit, for purposes of judicial economy, this complaint alleges only violations of the 30 percent limit.

[4] As mentioned above, Defendant's Title V Permit incorporates a lower, 20 percent opacity limit, applicable to the Big Brown's main boilers. *See* Title V Permit (Exhibit B) at 16 & 35 (citing TAC Board Order 90-14, which establishes a 20 percent opacity limit).  Thus, emissions with greater than 30 percent opacity, necessarily also violate the 20 percent opacity limit.

3,069 times; and Unit 2 violated this limit 3,451 times.[5]  *See* Notice of Intent to Sue (Exhibit A),

Attachments B & C; Exhibit C.[6]

27.    Many of these violations exceed 90 percent opacity, more than triple the plant's

legal limit.  In fact, during the fourth quarter of 2010, the only quarter that Defendants reported

each opacity violation individually (rather than combining multiple violations together in

blocks), the Big Brown plant's emissions exceeded 90 percent opacity almost twenty percent of

the time (and exceeded 75 percent opacity approximately half of the time).

**Cause of Action No. 2:**  Defendant violated and continues to violate the applicable particulate

matter limit contained in the Texas SIP and the Big Brown plant's Title V permit.

28.    Plaintiff re-alleges and incorporates Paragraphs 1-23.

29.    30 TEX. ADMIN. CODE § 111.153(b), which has been approved by EPA into the

Texas SIP, prohibits emissions from the Big Brown plant from exceeding "0.3 pound of total

suspended particulate per million Btu heat input, averaged over a two-hour period."  74 Fed.

Reg. 19,144 (Apr. 28, 2009) (approving 30 TEX. ADMIN. CODE § 111.153(b) into the Texas SIP).

The Big Brown Plant's Title V Permit also specifically incorporates the 0.3 lb/hour PM limit.

Title V Permit (Exhibit B) at 35.  These limits protect the public from harmful PM exposure,

including mercury pollution, which, as discussed above, current science links to numerous

human health effects.

---

[5] 30 TEX. ADMIN. CODE § 111.111(a)(1)(E) allows for one exemption from the 30 percent opacity limit per hour "during the cleaning of a firebox or the building of a new fire, soot blowing, equipment changes, ash removal, and rapping of precipitators."  In calculating the number of violations listed in the Notice of Intent to Sue and in this Original Complaint, we have conservatively exempted one 30 percent opacity limit violation per hour, under the generous assumption that the reason for the exceedance may fall under one of the allowable exceptions.

[6] Attachment B to the Notice of Intent to Sue summarizes the number of opacity violations at the Big Brown plant by quarter.  Attachment C to the Notice of Intent to Sue (not included with this Original Complaint) provided Defendants notice of each separate opacity violation between July 2006 and December 2010 (inclusive), including the date and time of each violation.  Plaintiff removed those violations that are more than five years old in Exhibit C.

30.     Using: (1) Defendants' self-reported heat input and sulfur dioxide emissions data (available at EPA's Clean Air Markets database); (2) Defendants' self-reported monthly heat content, sulfur content, and ash content of coal by coal type data (available on the Energy Information Administration's website); and (3) information contained in Defendants' Application for Amendment to Permit No. 56445 for Incorporation of Planned Maintenance, Startup, and Shutdown Activities (including estimated emissions and inputs), Plaintiff calculated PM emissions from Big Brown's main boilers.  As illustrated in Attachment D to the Notice of Intent (Exhibit A), PM emissions from the Big Brown Plant violated the applicable PM limit on at least 370 occasions between January 2008 and July 2011.

## VI.        PRAYER FOR RELIEF

WHEREFORE, based upon the allegations set forth above, Plaintiff respectfully requests that this Court:

A.     Declare that Defendants have violated and continue to violate the Clean Air Act, the relevant provisions of the Texas SIP, and their Title V Permit by failing to comply with the opacity and particulate matter limits mandated therein;

B.     Enjoin Defendants preliminarily and permanently from operating the Big Brown plant, except in accordance with a compliance schedule that will cause the plant to comply with the opacity and PM limits in the Texas SIP and their Title V permit in a timely manner;

C.     Order Defendants to take other appropriate action, including beneficial mitigation projects authorized under the Clean Air Act, 42 U.S.C. § 7604(g)(2), to remedy, mitigate, and offset the harm to the public health and the environment caused by the violations alleged above;

D.     Assess a civil penalty in the amount of $37,500 per day, for each violation after January 12, 2009, and $32,500 per day for each violation on or before January 12, 2009;

E.     Award Plaintiff its costs and attorneys' fees related to this action; and

F.     Grant such other relief as the Court deems just and proper.

Date: May 1, 2012                          Respectfully submitted,

By: _____

ENVIRONMENTAL INTEGRITY PROJECT
Erin Fonken
Texas Bar No. 24059112
Ilan Levin*
Texas Bar No. 00798328
1303 San Antonio Street, Suite 200
Austin, Texas 78701
Phone: 512-637-9477
Fax: 512-584-8019

**ATTORNEYS FOR PLAINTIFF**

*Western District of Texas *pro hac vice* Application to be filed.

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Sierra Club

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Environmental Integrity Project, 1303 San Antonio Street, Suite 200, Austin, Texas, 78701, 512-637-9477

## DEFENDANTS

Energy Future Holdings Corporation and Luminant Generation Company, LLC

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | **PERSONAL INJURY** ☐ 362 Personal Injury - Med. Malpractice ☐ 365 Personal Injury - Product Liability ☐ 368 Asbestos Personal Injury Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 340 Marine | | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **PERSONAL PROPERTY** ☐ 370 Other Fraud ☐ 371 Truth in Lending ☐ 380 Other Personal Property Damage ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☒ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Clean Air Act (42 U.S.C. Section 7604)
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE
05/01/2012

SIGNATURE OF ATTORNEY OF RECORD
*Erin Fonken*

## FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____